(90 South. 351)

## WHITEHEAD v. STATE.    (4 Div. 927.)

(Supreme Court of Alabama.    June 30, 1921.)

**1. Criminal law ⟳622(1)—Court may grant separate trial on demand by state.**

When the defendant does not demand a separate trial, as Code 1907, § 7842, permits, the court may, in its discretion, grant a demand of the state for separate trial.

**2. Criminal law ⟳279—Pleas in abatement after plea of not guilty too late.**

After plea of not guilty, pleas in abatement to the indictment under Gen. Acts 1909, p. 315, § 23, are too late, though the court in its discretion may permit them to be filed at such time.

**3. Criminal law ⟳292(1)—Demurrer properly sustained to pleas in abatement.**

Demurrers were properly sustained to pleas in abatement to indictment that two of the grand jurors were legal resident citizens of another state, and that the grand jury that found the indictment was not drawn from a legal jury box, in that the box contained other names than male citizens of the county between the ages of 21 and 65, where neither plea averred that the jurors were not drawn by the officer designated by law, in view of Gen. Acts 1909, p. 315, § 23, though under Acts 1909, p. 309, § 11, and Gen. Acts 1919, p. 1039, it is the duty of jury commissioners and presiding judge to see that jurors possess the legal qualifications provided.

**4. Criminal law ⟳368(2), 419, 420(10)—Evidence as to statements and conduct of others held hearsay, and not part of res gestæ.**

In prosecution for murder against one who was present at the time of the killing of one supposed to have attempted to rape a brother's wife, evidence as to what a third person had told accused's brother concerning the assault on his wife, and that before killing him decedent was carried to the brother's house for his wife to identify, was hearsay evidence, and not part of the res gestæ, and was properly excluded, where defendant was not present at the time, and did not then know of the assault.

**5. Criminal law ⟳351(8)—State properly permitted to elicit that defendant asked witness to testify in certain manner.**

In prosecution for homicide, state was properly permitted to ask defendant's witness, "What did the defendant tell you about swearing in this case, if anything?" to which the witness answered, "He came and talked to me about it, and said if I would swear that J. told me about some guns being down there that they would not have my name in it."

**6. Homicide ⟳309(5)—When alleged killing arose out of attempted rape, refusal to charge on manslaughter proper.**

Where several persons captured a man who had raped or attempted to rape the wife of one of them, took him to the wife for identification, and then drove with him some distance to a swamp, where they killed him with guns while he was begging for his life, court properly refused to charge on the law of manslaughter, defendant either being innocent or guilty of first or second degree murder under Code 1907, § 7087.

**7. Criminal law ⟳829(1)—No prejudice in refusing covered charges.**

Accused cannot complain of refusal of court to charge as to principles of law covered either in the written charges given or the oral charge.

**8. Homicide ⟳305—Charge held properly refused as ignoring the law of aiding and abetting.**

In a prosecution for murder, a charge requested by defendant, that "If, after a consideration of all the evidence in this case, the jury have a reasonable doubt as to whether or not defendant shot on the occasion in question, then the jury should acquit him," was defective, in that it ignored the law of aiding and abetting, and pretermitted the law of conspiracy.

**9. Homicide ⟳305—Requested charge as to aiding and abetting held argumentative and misleading.**

The court properly refused, as being argumentative and misleading, a requested charge that "The defendant, after the death of deceased, could not aid or abet in the killing of the deceased."

**10. Homicide ⟳305 — Requested instruction held to ignore aiding and abetting.**

Court properly refused, as ignoring aiding and abetting, a requested charge that "if, at the time and on the occasion of the death of deceased, all that defendant did was to undertake to shoot into the dead body of deceased, he would not be guilty, unless the jury believed beyond a reasonable doubt that prior to the death of deceased defendant entered into a prearrangement or a conspiracy with some person or persons to do an unlawful act towards the deceased."

**11. Homicide ⟳305—Requested instruction to acquit in absence of conspiracy held properly refused.**

In prosecution for murder, court properly refused to charge that, unless the jury believed from the evidence beyond a reasonable doubt

---

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that defendant conspired with another, whose wife had been assaulted, or other persons to do an unlawful act, then they must find him not guilty, ignoring the aiding or abetting of the unlawful act by his presence or otherwise.

**12. Homicide ☞30(I)—One aiding and abetting guilty.**

One who aids or abets in the killing of another by his presence or otherwise is as guilty as though he fires the fatal shot.

**13. Homicide ☞268—Guilt held question for jury.**

In a prosecution for murder of one who assaulted a brother's wife, guilt of defendant *held* for the jury.

**14. Homicide ☞281—Conspiracy to kill held for jury.**

In prosecution for murder of one assaulting brother's wife, whether or not there was a conspiracy to kill *held* for the jury.

**15. Homicide ☞309(3)—No charge on manslaughter in absence of evidence thereof.**

The court should not charge the law on manslaughter when there is no evidence on which to base or rest the law.

**16. Homicide ☞309(3)—Charge properly refused as indirectly permitting verdict of manslaughter not warranted by evidence.**

In prosecution for murder, where no evidence warranted submission of question of manslaughter, court properly refused to instruct that, "if the jury have a reasonable doubt as to whether the killing was done deliberately, or as to whether it was done with premeditation, then they cannot in any event find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done with malice, then they cannot find the defendant guilty of murder in any degree, but only of manslaughter at most; and if after considering all the evidence, the jury have a reasonable doubt as to defendant's guilt of manslaughter, they should find defendant not guilty," being an indirect attempt to give right to bring in verdict of manslaughter.

Gardner and Thomas, JJ., dissenting in part.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Babe Whitehead was convicted of murder in the second degree and he appeals. Affirmed.

The pleas in abatement referred to will be found fully set out in the report of the Case of Dan Whitehead, post, p. 399, 90 South. 356.

The following charges were refused to the defendant:

(3) "If, after a consideration of all the evidence in this case, the jury have a reasonable doubt as to whether or not defendant shot on the occasion in question, then the jury should acquit him."

(12) "The defendant after the death of deceased could not aid or abet in the killing of the deceased."

(13) "If, at the time and on the occasion of the death of deceased, all that defendant did was to undertake to shoot into the dead body of deceased, he would not be guilty, unless the jury believed beyond a reasonable doubt that prior to the death of the deceased defendant entered into a prearrangement or a conspiracy with some person or persons to do an unlawful act towards the deceased."

(14) "In this case there is no evidence of a conspiracy between defendant and any other person or persons to either kill the deceased or do him great bodily harm."

(C) Affirmative charge for the defendant.

(D) "Unless you believe from the evidence in this case, beyond all reasonable doubt, that defendant conspired with Dan Whitehead, or other person or persons, to do an unlawful act, then you must find the defendant not guilty."

(F) "If the jury have a reasonable doubt as to whether the killing was done deliberately, or as to whether it was done with premeditation, then they cannot in any event find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done with malice, then they cannot find the defendant guilty of murder in any degree, but only of manslaughter at most; and if, after considering all the evidence, the jury have a reasonable doubt as to defendant's guilt of manslaughter, they should find defendant not guilty."

Boswell & Ward, of Hartford, and C. D. Carmichael and A. A. Carmichael, both of Geneva, for appellant.

The plea in abatement was good, and the grand jury was not saved by section 5269, Code 1896; 154 Ala. 44, 45 South. 666. It is not saved by section 7572, Code 1907, nor by section 23, p. 315, Acts 1909. 8 Ala. App. 374, 62 South. 318. The plea calls into play sections 6, 7, and 11, Const. 1901. 179 Ala. 27, 60 South. 908; 96 Ala. 120, 11 South. 424; 16 Ala. App. 197, 76 South. 487; 171 Ala. 38, 55 South. 118. The court erred in refusing the charges requested by defendant, especially in refusing to charge on manslaughter. 117 Ala. 14, 22 South. 666; 174 Ala. 53, 57 South. 31; 146 Ala. 66, 41 South. 274; 59 Ala. 106; 102 Ala. 65, 15 South. 722; 83 Ala. 1, 3 South. 749, 3 Am. St. Rep. 682. Counsel discuss the evidence, but without citation of authority.

Harwell G. Davis, Atty. Gen., for the State.

The demurrers to the pleas were properly sustained. Sallie Garner v. State (7 Div. 127) ante, p. 56, 89 South. 69. There was no error in ordering a severance. 204 Ala. 687, 87 South. 177. The court did not err in the omission or exclusion of evidence. 10 Ala. App. 255, 65 South. 206. There was no evidence authorizing the conviction on manslaughter. 125 Ala. 1, 28 South. 406. The other charges were properly refused.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

MILLER, J. [1] The defendant, Babe Whitehead, was jointly indicted with others for the offense of murder in the first degree. The defendant did not demand a separate trial. The state by its solicitor did. There was no objection by the defendant. The court granted it. This was not error. When the defendant does not demand a separate trial as the law permits (Code 1907, § 7842), whether the trial shall be joint or separate then rests in the sound discretion of the court. Wilkins v. State, 112 Ala. 55, 21 South. 56; Charley v. State, 204 Ala. 687, 87 South. 177.

[2] The defendant was duly arraigned on the indictment, and pleaded not guilty in open court on December 6, 1920. The court permitted the defendant on December 15, 1920, after a plea of not guilty had been entered, to file three pleas in abatement to the indictment. These pleas come too late. A plea in bar, not guilty, waives pleas in abatement. It must be filed before plea to the merits. Jones v. State, 181 Ala. 63, 61 South. 434; Smith v. State, 142 Ala. 14, 39 South. 329.

"Any plea in abatement to an indictment must be filed at the first term at which the indictment is found, if the accused has been arrested, or if the accused has not been arrested such plea in abatement must be filed at the first term at which it is practicable after the defendant has been arrested, and in all cases such plea in abatement must be filed before the plea to the merits." Section 23, Gen. Acts 1909, p. 315.

[3] This is plain. It cannot be misunderstood. It needs no interpretation. "In all cases such plea in abatement must be filed before the plea to the merits." The court permitted them to be filed. This was in the sound discretion of the court. Whittle v. State, 89 South. 43.[1] It could have refused to allow them filed after plea of not guilty was entered. Plea 1 averred that one of the grand jurors, Barney Castelow, was a resident of the state of Florida at the time, and participated in the proceedings leading up to the indictment. Plea 2 averred that a grand juror, Barney Castelow, who participated in the proceedings leading up to the finding of the indictment, was a legal resident citizen of the state of Florida at the time the jury commissioners placed his name in the jury box. Plea 3 averred that the grand jury that found the same was not drawn from a legal jury box, as required by law, in this: The said box contained other name or names than male citizens of Geneva county, Ala., between the ages of 21 and 65 years of age. The state demurred to each of these pleas. Thus the Legislature spoke on this subject:

"No objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement, except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same." Section 23, Gen. Acts 1909, p. 315.

This demurrer of the state raised this question, and assigned the foregoing ground to each plea. Neither plea averred that the grand jurors were not drawn by the officer designated by law. Hence the court properly sustained the demurrers. The facts alleged in each came within the curing clause of the statute. Section 23, Gen. Acts 1909, p. 315.

It is the duty of the jury commissioners to place the names of the citizens of the county in the jury box with the qualifications required by the statute. Section 11, Gen. Acts 1909, p. 309. It is also the duty of the presiding judge, under section 18 of the act, as amended, Gen. Acts 1919, p. 1039, to "hear all excuses and claims of exemptions and disqualifications" of jurors, before placing the names in a hat or box and drawing the grand jurors therefrom. While it is the duty of the jury commissioners and the presiding judge to see that the jurors possess the legal qualifications under said act before serving, still a failure to do so will not render the indictment void. Such defects were intended to be and are cured by section 23 of General Acts 1909, p. 315. Spigener v. State, 62 Ala. 383; Oliver v. State, 66 Ala. 8; Ex parte Rodgers, 190 Ala. 630, 67 South. 253; Garner v. State, ante, p. 56, 89 South. 69.

The dead body of Alto Windham, a white man, was found in the swamp near a river in Geneva county a short time before the indictment was found. His right arm was badly shot, broken all to pieces; his right side was wounded by a glancing shot; there was a "large wound in breast, in which an egg could have been dropped with ease." The deceased was seen in an automobile the afternoon of the evening his dead body was found, with Dan Whitehead, brother of defendant, and others armed with shotguns, going from the direction of Dan Whitehead's house to the river swamp. They first carried the deceased to Dan Whitehead's house, and from there to the swamp, where his body was found. The defendant, Babe Whitehead, was not with them in the automobile. Son Whitehead just before sunset of that day went to defendant's home, called him, told him Dan Whitehead was in trouble, some negro had raped his wife, and they had gone toward the river hunting him. The defendant got his gun and with Son Whitehead walked in a hurry to the river swamp, about two miles away, where Dan Whitehead and four or five others were with Alto

[1] 205 Ala. 639.

Windham. When they reached the place defendant said: "Dan, I want to see you a minute." Dan replied, "If you want to see me, see me here; I am not going anywhere." He went and whispered to Dan. Some one asked deceased his name. Some one said, "Tell the man your name." He said, "My name is Alto Windham." Alto Windham said, "Please let me live." Some one said, "If we let you go, you will come back here and rape every woman around here." Somebody said, "Let's kill the s—— of a b——, and save the county the expense of trying him." · After defendant "talked with Dan, he came back and lined up in position with the rest of them." They had their guns. Dan said to the deceased, "Stand up, old man, and look at me," and as deceased got up he said, "Please let me live." Dan shot him down when he stood up, and then there were four or five shots by the others. One witness testified that after Dan shot "Babe Whitehead started to fire his gun, and I caught hold of it, and said, 'Babe, don't do that,' and he said 'This gun must shoot,' and then he shot and his gun went off in the air."

The testimony of defendant and his witnesses was, in substance, that when he reached the place where deceased was killed he asked "if they had caught him, and they said they had." Defendant said, "Is he a negro or white man," and some one replied, "He is too low down s—— of a b—— to be called a negro." Defendant asked, "What has he done; had he raped the woman?" and some one one said, "No, he had just attempted to rape her." The defendant then gave his gun to Jack Brooks and went to the river to get some water, and when he returned he heard them talking about killing him. Defendant said, "That won't do; yes; we will go and stop them." As defendant returned to the crowd, Jack Brooks said, "Kill the dam s—— of a b——; if you don't he will come back and rape every woman in this country." Defendant said, "Boys, that won't do," and went over to where Dan was standing, and defendant said, "Dan, come here; this won't do; let me talk to you," and said to him, "Lay down your gun and come here." Dan replied, "If you have anything to say, say it here;" and I did not say anything further, and I turned and went off, and Aaron Windham was kind of behind me, and we walked something like 15 or 20 steps when the guns fired." The evidence for the defendant was that he did not shoot at all; did not have his gun any more after he gave it to Jack Brooks. Many witnesses testified that defendant's character for peace and quiet in the community where he lived was good.

The jury convicted the defendant of murder in the second degree, and fixed his punishment at 25 years' imprisonment in the penitentiary.

[4] The defendant asked the witness Brooks on cross-examination this question: "What did Monroe Byrd tell Dan Whitehead in the woods?" The court sustained state's objection to this question. The defendant asked Dan Whitehead "what Monroe Byrd told him when he came to where he was in the woods?" The court sustained the state's objection to this question. The defendant stated he expected the said witnesses to answer "that Monroe Byrd that afternoon came to where Dan Whitehead was at work and told him that some one had raped or attempted to rape his wife, or had insulted her." It is hearsay evidence, and not part of the res gestae. The defendant was not present; knew nothing of it. The record affirmatively shows at that time defendant Babe Whitehead had not heard of the matter in question. And in this the court did not err; and for the same reasons the court properly refused to allow the defendant to prove that his brother, Dan Whitehead, and others carried the deceased to Dan's house for his wife to see him. This was before deceased was carried to the swamp. The record shows it was before Babe Whitehead, the defendant, had been called by his brother, Son Whitehead, and notified of the trouble. At that time the defendant was not present and knew nothing of it. It was too far removed from the time and place of the trouble. This testimony could neither justify nor extenuate in its tendency the defendant's acts. Rosenbaum v. State, 33 Ala. 354; Henry v. State, 79 Ala. 42.

[5] Lonnie Mims, a witness for defendant, on cross-examination by the state, was asked this question over objections of defendant:

"What did the defendant tell you about swearing in this case, if anything?"

He answered:

"He came there and talked to me about it, and said if I would swear that Jack Brooks told me about some guns being down there that they would not have my name in it."

This was not improper on cross-examination. The testimony called for tended to show the relations between the parties, the interest of the defendant, and reflected on the manner of defendant in obtaining testimony; promising not to have his name in it, if he would testify to certain things.

[6] The defendant requested the court in writing to charge the jury as to the law of manslaughter in the first degree. The court did not comply with his request. The bill of exceptions purports to set out in substance all the testimony in the case. We have read it. We find no evidence tending to prove directly or indirectly that Alto

Windham was killed under circumstances constituting manslaughter in the first degree. The law requires the court in homicide cases to give the jury the law on murder in the first and second degrees. If a defendant is convicted of murder, then the degree must be fixed by their verdict. This makes it necessary for the court to charge the law on both degrees of murder. Section 7087, Code 1907.

The deceased was charged with either having committed rape or assault with intent to ravish the wife of Dan Whitehead, or with insulting her. Rape is a grievous offense, heinous in the sight of the law and man. Assault with intent to ravish is in law grievous and heinous, but of less degree than rape; insulting her, a woman, by opprobrious words is a misdemeanor. If he was guilty of either offense charged, the law furnished the punishment. The law should have been invoked. It should always prevail. The deceased was in the presence, control, and custody of Dan Whitehead and his friends for hours. They carried him to Dan Whitehead's house; showed him to his wife. Then he went in an automobile with him (deceased) to the swamp. They were armed with shotguns. The deceased was not armed. He was in their power. He was charged in the swamp with either rape, assault to rape, or insulting language; one said he was guilty only of assault to rape; none said he was guilty of anything else. He begged for his life. As he begged to live, five or six shots rang out, and his life was gone. There was cooling time, if any offense was committed by him. He was not killed under sudden passion, with provocation. It was deliberately and premeditatedly done, with deadly weapons, showing malice and formed design. At this time, this place, and the manner in which he was killed, we see nothing to reduce the offense from murder to manslaughter. The court properly refused to charge the jury on the law of manslaughter.

The homicide involved here under the evidence was either murder in the first or second degree. The defendant was guilty of one or the other or not guilty of any offense. This being true, there was no necessity for the court to charge the jury on the law of manslaughter in the first degree. It would have been abstract. This law was not applicable to the facts of this case. Section 7087, Code 1907; Gafford v. State, 125 Ala. 1, 28 South. 406; De Armon v. State, 71 Ala. 351; Brown v. State, 109 Ala. 70, 20 South. 103.

The evidence showed Dan Whitehead had been tried by another jury for this offense; he was convicted of murder in the first degree, and his punishment fixed at imprisonment in the penitentiary for life.

"All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must * * * be indicted, tried, and punished as principals." Section 6219, Code 1907.

The oral charge of the court to the jury was concise, clear, and comprehensive. It covered the law completely on the subject of murder and its degrees, coconspirators, aiding and abetting in the commission of felonies, conspiracies to do an unlawful act, reasonable doubts, and good character.

[7-14] The court at the request of the defendant gave 12 written charges. These written charges and the oral charge cover every principle of law applicable to this case, and any refused charges that state the law correctly are error without injury, as defendant had the benefit of the principle of law either in the written charges given or the oral charge or both. Charges 1, 11, E, and O, refused, state the law correctly, but the principles therein are given the jury in charges 10, 18, and A, as well as the oral charge. Refused charge 3 was defective. It ignores the law of aiding and abetting in the commission of the offense, and pretermits the law of conspiracy. Charge 8 leaves out the principle of conspiracy. Given charge 7 covers it fully. Charge 12 is argumentative, and calculated to mislead the jury. Charges 13 and D were properly refused. Each leaves out aiding or abetting by his presence, or otherwise, in the commission of the offense. If defendant aided or abetted in the commission of the offense, he was guilty, no matter who fired the fatal shot. Charges 14 and C were properly refused. It was a question for the jury to settle whether he was guilty or not guilty, and whether there was a conspiracy or not from the evidence. The testimony was in conflict on these subjects.

[15] Refused charge B was abstract. It defines manslaughter in the first degree, and directs verdict of manslaughter in the first degree, if the jury have reasonable doubt as to whether the killing was done maliciously, but believe beyond a reasonable doubt it was done without justification and intentionally. There was no evidence, as hereinbefore stated, tending directly or indirectly to show that Alto Windham was killed under circumstances constituting the offense of manslaughter in the first or second degree. The court should not charge the law on manslaughter when there is no evidence on which to base or rest the law. There must be evidence in the case on which the law of manslaughter can operate before the court will be put in error for refusing to give the jury that law. Gafford v. State, 125 Ala. 1, 28 South. 406, and other authorities hereinbefore cited.

[16] Charge F is bad. It attempts indi-

rectly to give the jury the right to bring in a verdict of manslaughter. There is no evidence to prove manslaughter.

We find no error in the record.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SAYRE, and SOMERVILLE, JJ., concur.

GARDNER and THOMAS, JJ., dissent as to pleas in abatement, and concur in the rest of the opinion.

GARDNER, J. (dissenting in part). Defendant filed a plea in abatement to the indictment to the effect that the same was not found by a legally constituted grand jury, in that one member of said grand jury participated in the deliberations and proceedings leading up to the indictment, and in voting thereon, to wit, Barney Castelow was at the time a nonresident of Alabama, being a legal resident of the state of Florida. The state demurred to this plea upon the ground, among others, that it fails to aver that the grand jurors who found the indictment were not drawn by officers designated by law to draw the same. The court sustained the demurrer of the state, and this ruling presents the important question upon this appeal.

One of the qualifications of a juror, whether grand or petit, is that he should be a resident of the county where he is summoned to serve. Amos v. State, 96 Ala. 120, 11 South. 424; Acts 1909, p. 305. In Godau v. State, 179 Ala. 27, 60 South. 908, the court said:

"Only citizens are qualified to serve as jurors in this state, and the trial court properly held that Lester Bodden, a British subject, was not competent to serve as a juror on the defendant's jury."

The nonresident grand juror was therefore not a qualified grand juror, and, as pointed out in Nixon v. State, 68 Ala. 535, there can be no rule of limitation in such an important matter which can stand the test of logical soundness short of total exclusion.

If the courts are to permit one nonresident of the state to serve on the grand jury, then under the same rule the courts must of necessity permit a greater number. It is not the vote alone, but the influence of the grand juror, which must be taken into consideration. If a nonresident of Alabama, though a resident of another state, may participate in the deliberation of the grand jury of Geneva county, the same rule of reasoning would permit a subject of a foreign country to also serve, and, if permitting one, then a greater number should be allowed, and the constitutional and statutory safeguards thrown around the citizens would be thus undermined. As the weight of the influence of such illegal grand juror cannot be estimated, and as his participation in the deliberation was violative of the constitutional and statutory safeguards of the defendant, the doctrine of error without injury cannot save the cause from reversal. The case of Kuykendall v. State, 16 Ala. App. 197, 76 South. 487, by the Court of Appeals, bears close analogy in support of this conclusion.

The provisions of section 23, Acts 1909, p. 315, limiting the grounds for objection to the formation of a grand jury, were not intended to foreclose a question of so mandatory character as that here presented. Zininam v. State, 186 Ala. 9, 65 South. 56; Jackson v. State, 171 Ala. 38, 55 South. 118.

I respectfully dissent.

THOMAS, J., concurs in the foregoing views.