26 So.2d 611

## TROUP v. STATE.

### 8 Div. 452.

Court of Appeals of Alabama.

Feb. 19, 1946.

Rehearing Denied March 19, 1946.

310

Melvin Hutson and S. A. Lynne, both of Decatur, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen. for the State.

314

HARWOOD, Judge.

The appellant Herman Troup, formerly Clerk of the City of Decatur, was indicted for embezzlement and larceny of monies and funds of the City of Decatur which came into his hands during his tenure as Clerk. The indictment contained twelve counts, two of which charged larceny. The two larceny counts were withdrawn by the State. Seven of the embezzlement counts were framed so as to charge embezzlement in its usual concept, while three of the counts charged embezzlement under Section 127 of Title 14 of Code of Alabama 1940, the pertinent parts for the purpose of this case being:

"Whoever, being charged or in any manner intrusted with the collection, receipt, safe-keeping, transfer or disbursement of any money, funds, securities, bonds, choses in action or other property belonging to or under the control * * * of any county, civil or school township, city or town, or any officer thereof, converts to his own, use, or to the use of any other person or corporation, in any manner whatever contrary to law, or uses by way of investment in any kind of property, or loans, either

with or without interest, or deposits with any person or corporation contrary to law, or exchanges for other funds, except as allowed by law, any portion of such money, funds, securities, bonds, choses in action or other property, is guilty of embezzlement, and, on conviction, shall be punished as if he had stolen the same."

The appellant duly filed a plea in abatement to the indictment setting out that Thomas M. Ellrod, one of the members of the grand jury returning the indictment was not a resident of Morgan County, but was a resident of Marshall County, and that said Ellrod was not a prosecuting attorney, official reporter, nor court official, and his presence and participation in the grand jury proceedings was legally unauthorized.

Demurrer was filed to the plea, the grounds being that the plea failed to show that the grand jury, and particularly the grand juror mentioned in the plea was not drawn by, and in the presence of the officer designated by law to perform such function. The trial court sustained the demurrer to the plea.

The rule in a substantial majority of jurisdictions is that an unauthorized or incompetent person acting with the grand jury vitiates indictments returned by such body if attack thereon is timely made. In Alabama, however, the rule is otherwise due to the operation of Sections 278 and 285 of Title 15, Code of Alabama, 1940, and the construction placed thereon by our Supreme Court.

For the purposes of this opinion only Section 278, supra, need be set out, and it is as follows:

"No objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same; and neither this objection, nor any other, can be taken to the formation of a special grand jury summoned by the direction of the court."

In Whitehead v. State, 206 Ala. 288, 90 So. 351, 353, demurrers to the plea in abatement to the indictment in that case were sustained where the plea set out that one of the grand jurors was, and had been at the time the jury commissioners placed his name in the jury box, a legal resident of Florida. In affirming the case the court, through Miller, J., said as to this point:

"Neither plea averred that the grand jurors were not drawn by the officer designated by law. Hence the court properly sustained the demurrers. The facts alleged in each came within the curing clause of the statute. Section 23, Gen.Acts 1909, p. 315."

Section 23, Gen.Acts 1909, supra, is the precursor of Section 278 of Title 15, Code of 1940, supra, and the two Statutes are practically identical. Therefore, regardless of the views of the writer of this opinion as to the correctness or soundness of the doctrine of the Whitehead case, particularly in its constitutional aspect of due process of law, we are bound thereby, as was the trial judge.

The appellant thereafter filed a demurrer to the indictment setting forth some fifty eight grounds therefor.

No useful purpose would be served by a detailed discussion of these numerous grounds, but suffice to say that the counts of the indictment substantially followed the applicable Statutes, charged every material ingredient of the respective offenses, and sufficiently informed the appellant of the charges against him. The action of the trial court in overruling the demurrer was in our opinion correct. Stein v. State, 37 Ala. 123; Enzor v. State, 232 Ala. 257, 167 So. 336; State v. Dodd, 17 Ala.App. 20, 81 So. 356; Morris v. State, 18 Ala.App. 456, 93 So. 61; Masters v. State, 18 Ala.App. 614, 94 So. 249; Eastep v. State, 25 Ala.App. 593, 151 So. 616.

In October 1942 Mr. Louis Bell was employed to audit the books of the City of Decatur. It was shown that Mr. Bell is a graduate of School of Commerce of the University of Alabama, and has had about fifteen years experience in the field of accounting. For eight months he was bookkeeper in the office of the Gulf Refining

Company in Pittsburgh, Pennsylvania, then held similar positions with the Great Atlantic and Pacific Tea Company for six years, the Government Resettlement Association in Florida for a year and a half, and the Malone Freight Lines for about three and a half years. Since 1940 he has had his own public accounting office. During his accounting career Mr. Bell has had considerable experience in installing systems of accounting, both during his employment above mentioned, and since opening his own office. In view of the above background Mr. Bell was, in our opinion qualified to testify as an expert in accounting, and appellant's contention that he was not so qualified because not a certified public accountant is without merit.

Bell's testimony was based on facts ascertained from an examination of the books and records of the city and its various departments, receipts, and bank deposits. These records after identification were received in evidence.

■■ An accountant who has examined certain books and schedules which have been introduced in evidence may state the results of his computations therefrom. Kersh v. State, 26 Ala.App. 15, 153 So. 284; certiorari denied, 228 Ala. 364, 153 So. 287. In our opinion Bell's testimony was well within the above rule, and the many objections grounded on this feature of Bell's competency were correctly overruled.

Bell's testimony was voluminous, and as to many items and transactions, in complete detail. We believe it a fair summary to say that for the fiscal year 1942 he made a detailed, regular annual audit, and for the preceding five years he made an audit and cross check of all items of $100 and over. As a result the 1942 detailed audit shows unreported cash in the amount of $13,050.20, of which $1452.03 was repaid prior to 30 September 1942, and $6,181.20 between 30 September and 30 November, 1942; for the fiscal year 1941 the unreported cash was $8,658.87, of which $2726.68 was repaid in 1942; for the year 1940 the unreported cash was $1913.40, of which $1148.90 was repaid in 1941; for 1939 the unreported cash was $2,152.73, of which $343.20 was repaid in 1940; there was no

unreported cash for the years 1938 and 1937. The net unreported cash from 1939 through the period covered by the audit amounted to $15,375.35.

In the audit of items of $100 and more for the 5 years prior to 1942 a cross check was made, that is sources outside the books were checked to see if the City of Decatur received the funds it should have, and that such funds were accounted for. In the course of such examination, and also in the detailed annual audit for 1942, the cash journal, "the general ledgers and general fund receipts; public improvement assessment receipts; record of deposited checks; tax receipts; all the city's records, tax books" and also payroll records, deposit reports, and minute books covering the period of the audit were examined.

■ Appellant strenuously objected to the auditor Bell testifying as to conclusions arrived at by him from calculations made on an audit of items of $100 or more for the five years prior to 1942 on the grounds such audit was incomplete. Since the amount of unreported cash for these years resulted from items audited in the amount of $100 or more, leaving intact items of less amount, any incompleteness in the audit it would seem could not prejudice appellant. In our opinion there was therefore no error in the action of the trial court in permitting Bell to testify to the amounts of unreported cash disclosed by this type of audit.

■ The State's first witness Knox McRae testified that he delivered to appellant in person on October 10, 1941, a check, dated October 10, 1941, payable to the City of Decatur, in the amount of $2100, as purchase price for land bought by him from the city, and a deed to the property was delivered to him by appellant. It was further shown that this check was cashed upon appellant's endorsement, and that its proceeds did not reach the city's treasury during the 1942 fiscal year. Thereafter appellant objected to testimony concerning various other items involving different dates and other persons on the theory that the State was precluded from such other showings as it had elected by its action to proceed on the McRae transaction. The court properly overruled such objections. The tendency of the evidence strongly supports the theory

that the appellant systematically instituted a series of withholdings of the city's monies in a continuous series of conversions. Under such circumstances doctrine of election does not apply. Willis v. State, 134 Ala. 429, 33 So. 226.

Several oral and written statements made by appellant concerning the irregularities in the city's accounts were made by appellant. After proper showing as to their voluntary character they were admitted in evidence over appellant's objection based on the contention that the corpus delicti had not been proven. In our opinion the corpus delicti had been thoroughly established, and therefore the objections were without merit.

On 30 October 1942, which was after the close of that fiscal year, and after the audit had begun, appellant brought to Mr. Bell, the auditor, an unsealed envelope containing $888.88 in currency. The envelope had the name George Namie written on it. Appellant at that time told Bell that he had wanted Namie's check in the above amount to clear before issuing a receipt, that he had intended issuing a receipt but the matter had slipped his mind. Other evidence showed that Namie had given to appellant a check dated August 15, 1941, in the amount of $888.88 and payable to the City of Decatur, covering the purchase price of land bought by Namie from the city. The check was endorsed by appellant and paid by the drawee bank on the day of its delivery to Troup.

Apparently at this same time appellant explained another unreported cash item for 1941 represented by a State warrant in the amount of $1616.59 by stating to Mr. Bell that another State warrant for the same amount had been received earlier, but had been misplaced on his desk and he had wanted the earlier check to clear first, that it was his intention to issue a receipt for the second check and deposit it but the envelope was misplaced and it slipped his mind.

During the audit, when Bell had inquired of appellant about certain items, appellant handed Bell a slip of paper with "T. M. Jones, $359.20," and "Sherrill Maner, $450.00" written thereon, with the statement that "that is two more" that he had used the money on.

On 27 November 1942 appellant signed a written statement setting forth 17 items with the names of the payors, amounts of each item, totalling in all $11,340.12 and dates of deposit, with the following statement concerning them:

"I have read the above items and to the best of my knowledge and belief they constitute all shortages since I have been in office as City Clerk, Total $11,340.27.

On 26 January 1943 appellant signed another statement which was as follows:

"Statement submitted by Herman O. Troup, Jan. 6, 1943.

"Louis Bell
"Public Accountant
"Phone 346, Decatur, Ala.

"I, Herman O. Troup, former clerk for the City of Decatur, Alabama, hereby state and submit that to the best of my knowledge and belief I did not get the proceeds from the following items for which no receipts appear to have been written;

| $ 888.88 | Mike Namie |
| 90.00 | Union News |
| 2100.00 | Knox McRae |
| 1616.59 | State of Alabama |
| 100.00 | Zu Lee Malone |
| 231.30 | Ark. Fuel & Oil Co. |
| 214.44 | Wofford Oil |
| 200.00 | Sherrill & Bessie Maner |
| 213.02 | Ark. Fuel Oil Co. |
| 1553.03 | Cash tickets signed 'J.E.W.' |

"I also wish to state that the item of $888.88 was originally withheld by me and placed in an envelope in the vault—Two or three months later when I looked for this cash to write a receipt it was gone out of the vault. I mentioned this to John but he stated he knew nothing of it. I did not mention it to Florence because she was not involved.

"The $200.00 item on Maner was originally withheld by me in the amount of $450.00 and placed in a separate container within the vault. Sometime later when I started to write up the receipt I found that $200.00 in cash had been taken from this container and a ticket signed 'J.E.W.,' marked $200.00 had been substituted. Later this ticket for $200.00 disappeared and

this amount is not included in the above cash tickets signed 'J.E.W.'

"It was my impression that the other items shown above had been properly handled.

"I also wish to state that to the best of my knowledge & belief that in addition to items previously acknowledged by me as being irregular, the following items constitute the total irregularities during my term of office as clerk of the City of Decatur:

| $1,000.00 | L&N RR |
| 190.00 | F. S. Hunt & J. L. Davis, |
| 350.00 | C. A. Moore, |
| 150.00 | J. S. Walker. |

"H. O. Troup."

It is noted that four of the items listed in this statement, towit: Union News, $90, Knox McRae, $2100, State of Alabama, $1616.59, and Zu Lee Malone, $100, also are included· in the seventeen items listed in the statement of 27 November 1942.

On the morning of 19 November 1942 a conference was held in the office of the Mayor, the appellant and Mr. John Caddell, attorney for the City of Decatur, being among those present. During this session appellant stated to Mr. Caddell that there was something he wanted to turn over to Mr. Caddell, as City attorney. He then took Mr. Caddell to the vault in the City Hall and removed from a crevice over the door inside the vault an envelope. This envelope contained· $399.01 in cash, and a cashier's check issued to the City of Decatur by the State National Bank in the amount of $2995.99. The appellant according to Mr. Caddell's testimony "told me there was $3395.00 in there representing the purchase price of property that the City owned by virtue of foreclosure of public improvement assessment to Decatur Better Built Homes, and he handed it to me and I asked him why it hadn't been reported, why he hadn't written a receipt for it at the time it was received, which was several months prior to that, I don't know exactly how long, and he told me—his explanation was that there were a number of different public improvement assessment funds that this money had to be broken down into and it was quite a task to write

a receipt and distribute this money into the various funds to which it belonged, and that he had simply deposited the check for the $3395 so that he would not hold it out for a long time, he had deposited it in lieu of other funds for which receipts had been issued and converted this money into cash and cashiers checks so as to keep it until he had time to write a receipt."

It further appears from Mr. Caddell's testimony that during this conference the appellant stated to him "that he realized and knew that there was a shortage, but that he didn't believe it was anything like as much as Mr. Bell's audit showed, I think he used the figures at that time, $5,000, that he thought $5,000 would entirely cover the amount of the shortage."

Mr. Russell Speake, a member of the Council of the City of Decatur, testified that subsequent to the report of the shortage in the City's funds it occurred to him he would like to talk to appellant. He went to appellant's home and the matter was discussed a few minutes. During this conference appellant stated to Mr. Speake "that he had made two mistakes, the first was ever taking the first dollar, and the second was ever letting John Wilks know about it." During the testimony of Mrs. Troup, wife of appellant, she stated that she was present during the conversation between appellant and Mr. Speake and that no such statement had been made by her husband during such visit by Mr. Speake.

 Fifty-five written charges were requested by appellant in the trial below. Twenty-two were given and thirty three were refused. We have examined with care the thirty-three refused written charges. In our opinion no reversible error resulted from their refusal by the trial judge. Of these requested written charges, Nos. 1a, 1b, and 1c contained misleading tendencies in respect to testimony of expert witnesses. Wilson v. State, 243 Ala. 1, 8 So. 2d 422. Charges Nos. 24 through 36 were general affirmative charges and properly refused.

 The remaining refused charges were either substantially covered by the very adequate oral charge of the trial judge or other given written charges, or

inapplicable to the law and the facts of this case.

The record discloses that during the argument to the jury the following occurred:

"Major W. H. Long, in his argument to the jury, called for the written confessions of the defendant, and he stated to the jury, among other things, that Mr. Troup had not denied the signatures to the written confessions, and in addition to that, Major Long stated to the jury that Mr. Troup had not denied the confession that John A. Caddell testified about.

"Defendant moved for a mistrial because of the remarks of the Solicitor to the jury.

"The Court stated to the Jury:

"Gentlemen of the jury, a few minutes ago Mr. W. H. Long, Solicitor of the Eighth Judicial Circuit, among other things, in his argument to the jury, made reference to a written showing that had been permitted to go to you as part of the evidence in this case—I mean a written confession instead of showing—by the defendant, and he stated to the jury that the defendant had not denied his signature to that confession, and immediately thereafter he made reference to a confession alleged to have been made by the defendant to John A. Caddell, one of the Attorneys for the City of Decatur, and the Solicitor said that there had not been any denial of that. Gentlemen of the Jury, that was an improper argument on the part of the Circuit Solicitor. It is the law that the defendant can use his own judgment and discretion as to whether or not he will take the stand. It is a constitutional right that is thrown around this defendant and if he elects not to take the stand there ought not be any comment on the part of the Solicitor or anyone else in this case in reference to that fact. That is his privilege, he can take the stand and become a witness if he 'desires, or he need not do it. So, Gentlemen, I want to caution you seriously not to let those remarks by the Circuit Solicitor influence you in any degree in arriving at your verdict. Those remarks have no place in this trial and I want you to disregard those remarks. Do not consider anything that the Solicitor said in reference to that matter and do not let anything that he said along that line influence you. That is out of the case, those

things that he said, and as I said a moment ago, it was no doubt inadvertently made by the Solicitor, but it was improper and it should not have been made.

"Mr. Lynne: We want a ruling on our motion.

"Court: The motion is overruled.

"Mr. Lynne: We reserve an exception, and we except to the instruction of the Court because it has not eradicated the invasion of the man's constitutional rights; it is prejudicial and cannot be wiped out.

"Court: All right, let's go along.

"Mr. Lynne: And we reserve an exception.

"Major Long: 'Gentlemen of the Jury, I am sorry I made that statement to you.'

"Mr. Lynne: That is a recalling of it to the jury's mind. We make the same motion. That is a reaffirmation of it, it is again putting it in the mind of the jury, and for that reason, we make the same motion that a mistrial be entered.

"Court: Overrule it.

"Mr. Lynne: We reserve it."

The appellant did not testify in this case. Such privilege is guaranteed by the Alabama Constitution of 1901, Article 1, Section 6, providing that in all criminal prosecutions the accused "shall not be compelled to give evidence against himself." To fortify this constitutional privilege our legislature has provided by Statute, appearing in our Codes since the Code of 1886, and now appearing as Section 305 of Title 15, Code of 1940, that: "On the trial of all * * * criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness; and his failure to make such request shall not create any presumption against him, nor be the subject of comment by counsel."

 In connection with the above provisions there seems to be a well developed subsidiary doctrine resulting from our cases that where a prosecuting officer improperly comments on a defendant's failure to testify, and the trial court sustains the objection thereto and promptly and appropriately instructs the jury of the impropriety of such remarks, then such remarks should not cause a reversal of the case.

Watkins v. State, 21 Ala.App. 585, 111 So. 43; Lucas v. State, 24 Ala.App. 468, 137 So. 902; Curlette v. State, 25 Ala.App. 179, 142 So. 775; Gable v. State, 31 Ala.App. 280, 15 So.2d 594, certiorari denied, 245 Ala. 53, 15 So.2d 600.

We have set out verbatim that portion of the record dealing with the improper remarks of the Solicitor in order to show the vigor with which the trial judge attempted to erase any injury to appellant resulting from such remarks. In view of the doctrine of the cases cited above, the strong tendency of the evidence pointing toward appellant's guilt, and the strength of the trial judge's remarks to the jury concerning the impropriety of such remarks, we do not feel that the appellant was sufficiently prejudiced to justify a reversal of the case for this incident of the trial.

No error appears in the trial judge's rulings on the numerous objections appearing throughout the record to various questions and admissions of evidence, and in our opinion no comment is indicated thereon.

Portions of the funds converted by the appellant were repaid at subsequent times. However it is no defense in a prosecution for embezzlement that the embezzler repaid the funds before the finding of the indictment. Wall v. State, 2 Ala.App. 157, 56 So. 57; Cephus v. State, 16 Ala. App. 499, 79 So. 197.

Section 424 of Title 37, Alabama Code of 1940 provides that a City Clerk "shall issue all licenses, receiving the money therefor, and pay the same over instanter to the city treasurer." The evidence shows that appellant received checks from R. L. Ziegler dated 30 September 1941, 19 January 1942, and 23 January 1942, in the amounts of $101, $200.50, and $20, respectively, in payment for wholesale meat dealers' licenses. These checks all bear appellant's endorsement and show payment by the drawee bank. No licenses or receipts were issued to Ziegler on these checks, and their proceeds were in the unreported cash items found by the auditor. They also appear in the list of items set out in appellant's written statement of 27 November 1942, in which he allegedly set out all shortages occurring since he had been City Clerk.

The evidence further is clear that on numerous occasions during his tenure as City Clerk the appellant, because of his official position, received payment of monies belonging to the city which were not accounted for, or only partially so.

It matters not whether it was appellant's official duty to receive these payments. The law is settled that a State officer, converting money received by him to be held for a specific purpose or to be delivered to another State officer for State use, will be guilty of embezzlement, although having no right to receive the money. Davidson v. State, 5 Ala.App. 106, 59 So. 687; Cowart v. State, 16 Ala.App. 119, 75 So. 711. Or as well stated in Lacy v. State, 13 Ala.App. 212, 68 So. 706, 711:

"Any fund or property belonging to the state coming into the hands of a public officer of the state by virtue of his office ipso facto constitutes such officer a trustee for the state. Wolffe v. State, 79 Ala. [201], 206, 58 Am.Rep. 590. And if the fund or property was received by such officer to be held by him for a specified purpose or to be delivered to another officer of the state, for the use of the state, although the officer had no right to receive it, such officer would be a bailee of the state and liable as such."

By analogy the same principles above enunciated must apply to city officers.

In his oral charge the trial judge instructed the jury as follows:

"Gentlemen of the Jury, under the law the Court charges the jury that it is not necessary in this case for the State to prove any definite sum of money was embezzled or fraudulently converted to his own use by the defendant, and if the jury believe from the evidence, beyond a reasonable doubt, that the defendant embezzled or fraudulently converted to his own use any sum of money, the property of the City of Decatur of the value in excess of $25.00, which money had come into his possession by virtue of his office as city clerk of the City of Decatur, it is your duty to find the defendant guilty as charged in this indictment.

"I charge you further, Gentlemen of the Jury, that this prosecution is limited to any offense which the State claims occurred during the three-year period immediately preceding the finding of the indictment, any evidence of any alleged irregularities prior to that time may be considered by you together with all the other evidence in the case, simply upon the question of the guilty knowledge of the defendant as to the crime of which he is charged in this particular case."

Such instructions were correct statements of the law applicable to this case. State v. Kersh, supra.

The evidence for the State certainly tended to establish that appellant did, for the three years next preceding the indictment, and also for some time prior to this three year period, convert funds of the City of Decatur coming into his hands as City Clerk, the amounts converted for each year being well above the $25 required to be shown. The jury's verdict, after proper and detailed instruction from the trial judge as to their duty in the premises, cannot be said to be without justification, or even remotely arbitrary.

The record is in our opinion free of error injuriously affecting the substantial rights of the appellant, and an affirmance of the case is in order.

Affirmed.