BOWEN W. SIMMONS, Retired Circuit Judge.
Appellant-defendant, an indigent, was indicted by the grand jury of Covington County, June 17, 1977, for robbery. A jury convicted him after his plea of not guilty and fixed his punishment at ten years imprisonment. An appropriate judgment was *64 entered and a timely appeal in forma pau-peris was taken.
The alleged robbery occurred on October 7, 1976, at night, in a more or less isolated spot on a rural dirt road in Covington County. The circumstances leading up to the alleged offense originated in Lowndes County at Ft. Deposit where the victim, Roger Lee Smith, who was a filling station employee, resided. He was in the market for two pounds of marijuana.
The victim was approached in Ft. Deposit by Ted Daniel Burkett, who was an acquaintance of appellant, Steven Kendrick Johnson. Burkett and appellant were riding together. The victim, after he got off from work about 5:00 P.M., on October 7, 1976, joined them. The three, after some delay in obtaining an automobile free of mechanical defects, went south and ended up in the western part of Covington County in quest of the marijuana that the victim wanted to buy; and where he was informed it could be obtained. All were drinking alcoholic beverages.
The paved road, Number 55, they were following, came to an end at a construction project where appellant got off to retrieve some marijuana which he said could be found there. After some minutes the victim joined appellant in the search.
The evidence is in conflict as to what happened at this point. At this time and point the alleged robbery occurred.
The victim, Smith, testified that while making the search, appellant hit him across the head with a gun and told him to take off his clothes and get in the car and leave. Smith complied. He testified also that he had $347.00 and some change in his pockets at the time. Smith called the sheriff’s office in Covington County and reported the incident. He later identified appellant from a photograph in the sheriff’s office.
On cross-examination, the victim admitted that he had told the appellant’s attorney a story that did not comport with what he told from the witness stand.
It appears from the evidence that the sheriff’s deputies were in possession of a warrant of arrest (not a search warrant) for appellant when they went to the home of Mrs. Obadiah Varner, near the scene, and there arrested appellant who was hidden in an attic or loft, so the officers testified, but came down and submitted to arrest.
The officers, with the permission of Mrs. Varner, searched a bedroom and there under a mattress, found some of the stolen articles, including some credit cards of the victim, $83.00, and a pistol, which was the property of appellant.
Appellant took the stand and testified that while looking for marijuana after they stopped, Smith hit him across the face.
“ . . . So, whenever he done that, I didn’t know what was happening. I will admit to the pistol, was mine and I pulled my gun and I hit him with it.
Q.» Across the face?
A. Yes, sir. I don’t know if it hit him across the face, but I did swing at him.
Q. Okay.
A. I might have hit him in the shoulder or somewhere.
Q. Where did he hit you?
A. He hit me across the face.
Q. With what?
A. Just his fist.
Q. All right, well, did you have an argument before the swinging started or what?
A. I asked him, I said, I believe somebody has ripped me off. I don’t know. The man just hit me. So, whenever he hit me, I don’t know what was happening. We was all drunk.”
Appellant on cross-examination testified:
“Q. And were you there when they took this pistol out from under the pillow and those other items from between the mattresses?
A. Yes, sir, I was.
Q. Did you put them there?
A. Yes, sir, I did.”
There was other evidence that supported the State’s version of the incident. Suffice it to say the State’s version of the incident and that of appellant were conflicting.
*65 I
Appellant contends the evidence presented to the jury was insufficient to support a conviction.
We are not in accord with this contention. The conflicts and inferences therefrom were properly submitted to the jury for their determination. All the evidence presented a jury question. The motion to exclude was properly overruled. The credibility of the witnesses was for the jury to resolve. Hyde v. Starnes, 247 Ala. 26, 22 So.2d 421; Williams v. State, 50 Ala.App. 341, 279 So.2d 145; Young v. State, Ala.Cr.App., 346 So.2d 509.
II
A second issue is whether the trial court erred in refusing, on several occasions, to grant a mistrial in the proceeding.
(a) The first instance occurred in the opening remarks of the District Attorney as he gave his rebuttal statement. We quote:
“MR. McGILL: I certainly want you to pay attention to the witnesses because without them we couldn’t be here, and I would also like you to pay attention to the demeanor of this Defendant because he too raised his right hand and was sworn in. Now, this time—
“MR. MORRIS: Now, wait a minute. I object to that, Your Honor. I object to his remark about the Defendant taking the stand.
“THE COURT: Yes, sustain.
“MR. MORRIS: And I move for a mistrial, Your Honor. I think that is very prejudicial.
“THE COURT: I deny the motion for a mistrial, and instruct the Jury that nothing said by any person in the opening statement is evidence and you should not consider the remarks of the District Attorney, whether or not the Defendant takes the stand. He is not required to take the stand under our system of law unless he elects to do so. And if he does not do so, it would be improper for you to consider that he did not.”
We note that appellant’s counsel made an opening statement as follows:
“MR. MORRIS: This is why we have Jury trials. So that you can see these people when they come up here. And this Roger Smith, he will come out here and he will be sitting right up there in front of you; and you can look at him; and you can notice his demeanor; and the way he acts; and the way he talks; and, I believe, this Mr. Burkett, the other young fellow that was allegedly involved, he is going to come out here.”
It is to be noted that this statement, while proper and legitimate, did invite the jury to observe the witnesses and their demeanor, particularly the prosecuting witness, Roger Smith. The District Attorney followed the same trend of suggestion, but improperly referred to the appellant and included him.
We hold, however, that the trial judge’s instruction to the jury, which was very clear and positive, cured the error. Troup v. State, 32 Ala.App. 309, 26 So.2d 611(12, 13).
(b) The second motion for a mistrial was made when a witness, Deputy Don Harrell, made a voluntary and unresponsive statement. We quote:
“Q. And you say, you had several conversations or meetings with him (appellant) after that, after that meeting on October the 12th in the Sheriff’s office. Do you remember when the next one was?
“A. I don’t remember; the next one was the next day or two. He sent me word that he wanted to see me.”
(Parenthetical matter added.)
There followed a series of questions on cross-examination that adduced the following:
“A. I don’t know whether there was anyone with me or not. I remember me and Kenny talking.
“Q. Where did you tell him his bond was set?
“A. In the hallway, on the right, where he was at.
“Q. What hallway?
*66 “A. In the jail. If you go straight through the jail on the second floor; the hallway on the right; the first cell. Also, on another occasion we talked to him, Jimmy Etheridge and myself. He sent word he wanted to plead guilty.
“MR. MORRIS: I move to exclude that, Your Honor. I haven’t asked him anything like that.
“THE COURT: Yes, that answer is not responsive.
“MR. MORRIS: And, Your Honor, I move for a mistrial. That is highly prejudicial.
“THE COURT: I want to be heard on the motion outside the presence of the Jury. Members of the Jury, be at ease. We will be back shortly.”
The court denied the motion and instructed the jury as follows:
“THE COURT: Members of the Jury, the witness in response to one of the questions, or voluntarily suggested that at some point the Defendant wanted to talk to him about pleading guilty. And I will instruct you later in my oral charge to you at the conclusion of the case to this effect, and I want you to understand right now, this Defendant has not plead guilty and he is innocent until proven guilty. He has a presumption of the innocence that attends him throughout the course of the trial, and is with him at this point. It would be highly improper (sic) you to consider that response by the witness. And it would be a violation of your oath as jurors if you did consider it. I will instruct the witness to answer only those questions that are asked you and not volunteer any information that is not asked you. If the answer can be yes or no to a yes or no question, then that is what you should answer.”
We hold that the instructions were sufficient to dissipate any prejudice that might have resulted by this unresponsive statement.
 (c) Again, a witness for the State, Jimmy Etheridge, testified:
“Q. What was the purpose of your being there or why did you go over to the jail?
“A. Don Harrell had told me that Kenny wanted to talk to me about pleading guilty.
“MR. MORRIS: I object to that, Your Honor, and ask that it be excluded.
“THE COURT: Yes, I sustain the objection.
“MR. MORRIS: And again, move for a mistrial?
“THE COURT: I deny the motion for a mistrial, and instruct the Jury, you should not consider that.”
Clearly, the above answer was responsive to the question, but hearsay. The court sustained appellant’s objection and denied his motion for a mistrial. The rulings were correct.
Thereupon the following questions and answers appear; there was no objection:
“Q. Where were you seated Mr. Ether-idge when Mr. Johnson came in the office?
“A. Behind the desk.
“Q. And did he take a seat?
“A. Yes, sir, across the desk from me.
“Q. What did you say to him, at that time?
“A. I told him, I understand he wanted to see me about pleading guilty.
“Q. What did he say?
“A. He said, yes.
“Q. That’s all.”
Ill
Appellant makes a final complaint, that the court erred when it admitted in evidence certain items found in the home of Mrs. Obadiah Varner. Assertion is made that these items were inadmissible because they were the fruits of an illegal search.
 We cannot agree that the search was illegal. It clearly appears that Mrs. Varner lived there and consented to the search. The consent authorized the search without a warrant therefor. Appellant was more or less an intruder, or an interloper. He did not live there, although his divorced wife and children were there. Appellant *67 admitted on the stand that he lived in Geor-giana with his mother. He had no proprietary interest in the premises and was just there in hiding. Kirkland v. State, Ala.Civ.App., 340 So.2d 1121(3); cert. den., Ala., 340 So.2d 1127. Even if no consent had been given, appellant could not lawfully complain. Wilson v. State, 57 Ala.App. 125, 326 So.2d 316(4), cert. den., 295 Ala. 429, 326 So.2d 319.
The judgment is affirmed.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10, of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.