BOOKOUT, Judge.
Grand larceny; sentence: eight years imprisonment.
The State’s evidence tended to show that on the night of October 8,. 1978, the Sheffield Repair Shop in Monroeville was broken into and approximately 500 lb. of copper wire was stolen. The theft was discovered early the next morning, and police officers began an immediate investigation.
The police were able to follow a trail left by the thief apparently made by a two-wheel hand cart. The trail led to a pile of copper wire behind a housing project where the appellant resided with a woman, Ora Odom. The appellant became a suspect in the theft because he was an employee of the repair shop and had failed to report to work on Monday morning, October 9, 1978.
Ora Odom let police officers into the apartment where she and the appellant lived. Upon searching the apartment, the officers found the appellant sitting on the floor in a bedroom closet with the door closed. Also found were a pair of shoes which fit certain tracks which the officers had followed to the apartment complex, and which had the same markings on the sole as footprints found outside the shop. Likewise, three welding gloves were found in a back bedroom of the apartment. Another similar welding glove had been found by officers along the trail- from the shop leading to the apartment. All of the gloves were identified as being similar to work gloves that had disappeared from the repair shop at some earlier, unspecified time. The shoes and the gloves were admitted into evidence.
After the State rested its case, the defense also rested. The appellant did not take the witness stand and testify in his own defense.
During closing arguments to the jury, the prosecutor made the following statement:
“MR. CAUSEY: These gloves were found right there with the shoes, which were admitted that they are L. C. Burson (sic) shoes. Ora Odom said that they were L. C. Burson (sic) shoes. In the apartment, where he was, where he was hiding, in the closet. Or maybe he was just sitting in the closet. I don’t know, he’s not going to tell us.” (Emphasis supplied.)
The appellant immediately attempted to object, but was cut off by the trial judge who overruled the anticipated objection and stated that the court had given wide latitude in argument to the defense and that the same latitude would be accorded to the prosecution. At the close of arguments, counsel for appellant moved for a mistrial based upon the comment of the district attorney to the effect that the appellant did not take the stand of testify. The trial court stated: “I’m going to overrule your *1241 motion. Because I’m going to so instruct the jury.”
Later, near the end of the trial court’s oral charge to the jury, the following instruction was given:
“Ladies, and gentlemen, in this case today, the defendant elected not to testify. He has. every right not to testify. The law of this state and the Constitution of the United States gives him an absolute right, not to testify. You are not to consider the fact, that he did not testify, in any way whatsoever, in arriving at your verdict, ladies and gentlemen. You are simply to take the evidence as you heard it from the witness stand, here today. And you are to apply the law to the facts as you heard them come from the witness stand, today. And you are to make your decision as to the guilt or the innocence of this defendant, strictly from that. And you are in no way to consider the fact that this defendant did not testify, in his own behalf today. He has that absolute constitutional right. As do all of us.”
The prior quoted comment of the prosecutor referring to the appellant, “. he was hiding, in the closet. Or maybe he was just sitting in the closet. I don’t know, he’s not going to teil us,” can only be construed as a direct comment on the failure of the appellant to testify. Such a comment amounts to reversible error unless proper action is taken by the trial court to cure its harmful effect. Whitt v. State, Ala., 370 So.2d 736 (1979);
In the instant case, the defense counsel objected and the trial court overruled. He then moved for a mistrial, and the court again overruled. The trial court did not instruct the jury concerning this issue until near the end of its oral charge. No exception was taken as to the oral charge. However, as to sufficiency of such charges generally on an accused’s right not to testify, see Smith v. State, Ala.Cr.App., 370 So.2d 312 [1979].
In Whitt, supra, Justice Bloodworth cited Troup v. State, 32 Ala.App. 309, 26 So.2d 611 (1946) as setting out a good example a “prompt, appropriate, and vigorous instruction to the jury as to the impropriety of comments on the failure of the defendant to testify.” He went on to state that such instructions did not need to be in the same verbiage as in Troup, supra, however, he did set forth the minimum standards acceptable to the Supreme Court in such instances:
“We suggest that, at a minimum, the trial judge must sustain the objection, and should then promptly and vigorously give appropriate instructions to the jury. Such instructions should include that such remarks are improper and to disregard them; that statements of counsel are not evidence; that under the law the defendant has the privilege to testify in his own behalf or not; that he cannot be compelled to testify against himself; and, that no presumption of guilt or inference of any kind should be drawn from his failure to testify. With appropriate instructions, we hold that the error of the prosecutor’s remarks will be sufficiently vitiated so that such error is harmless beyond a reasonable doubt. U. S. v. Brown, 546 F.2d 166 (5th Cir., 1977); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Beecher v. State, [294 Ala. 674, 320 So.2d 727] supra.”
Applying the above standards, we find:
(1) The trial court did not sustain the objection;
(2) The court failed to promptly instruct the jury;
(3) The court failed to instruct the jury that the comment was improper and to disregard it; and,
(4) The court failed to instruct that no presumption of guilt or inference of any kind should be drawn from the defendant’s failure to testify.
Therefore, pursuant to the decision of the Alabama Supreme Court in Whitt, supra, this case must be reversed and remanded ■ for a new trial.
REVERSED AND REMANDED.
All the Judges concur.