The indictment charged Ray Earley with the first degree burglary of the dwelling house of Mary Alice Duchock. The appellant waived youthful offender application and, at arraignment, with counsel present, entered a not guilty plea. The jury found the appellant guilty of "burglary in the first degree, as charged" and fixed punishment at ten years imprisonment. The trial court set sentence accordingly. The appellant's motion for new trial, challenging the weight and sufficiency of the evidence and the in-court identification of the appellant, was denied following a hearing thereon.
Prior to trial the appellant filed a motion to suppress the identification of the appellant, asserting that such was "unduly tainted" by certain pretrial identification procedures. A hearing was conducted on this motion, and it was then denied.
Mary Alice Duchock testified that she lived at 4121 6th Court in Wylam, Jefferson County, Alabama, with her husband and three children, on October 15, 1975. She stated that this date was on a Wednesday, and at about 7:30 p.m. her husband had not returned home from work, that she had fixed dinner, fed the three children, and was seated in the den reading the paper *Page 496 
when she heard the back door "shreaking." She stated that she got up, went down the hallway leading into the kitchen where she observed a white male and screamed at him to "get the hell out of there" (R. p. 15). She stated that the male hesitated a few seconds and then began to back out of the kitchen door. Mrs. Duchock stated she then telephoned the police, and the following day she swore out a warrant for the arrest of one Ray Earley after she had given the officers a complete description and they had brought some photographs for her to examine. She stated that she had not known Earley before the occurrence in question, but that she had received a telephone call that same evening from a friend, who told her that the man who entered her kitchen was the appellant, Ray Earley.
Mrs. Duchock stated that the following day Officer Webb brought a photograph of Earley to her home, and she told him, "Yes, that was Ray Earley" who had been in her kitchen the night before. The following day, October 16, 1975, Mrs. Duchock signed a complaint charging Ray Earley with unlawful trespassing.
On Saturday, October 18, 1975, Sergeants Mike Mosko and C.F. Hoehn came to her residence and exhibited to her eight photographs of white males similar to the description given by her to them of Ray Earley. Mrs. Duchock stated that no one made any suggestion to her about the photographs, but that, as she looked through them, she immediately recognized the photograph of Ray Earley as being very similar to the one she had viewed two days earlier which Officer Webb had brought to her home. Mrs. Duchock stated that she picked out Earley as being the man who had been in her home on the night of October 15, 1975.
Sergeant C.F. Hoehn testified that on October 21, 1975, accompanied by Sergeant Mosko, he went to the residence of Mrs. Duchock at 4121 6th Court in Wylam, Jefferson County. There he exhibited a group of eight photographs to Mrs. Duchock, indicating that he asked her to see if she could identify any of them. Sergeant Hoehn stated that he made no comment to her, and that the appellant's photograph was in the "middle" of the group. Mrs. Duchock, without hesitation, picked out the photograph of the appellant and stated that his hair was light blond in color, that he was about six feet tall, weighed about 160 pounds, had blue eyes, and had a problem with acne on his face.
Sergeant Hoehn stated on cross-examination that the photograph selected by Mrs. Duchock from the group, on October 21, 1975, was also the same photograph which Officer Webb had shown to her the day after the incident in question, and that it was in fact a photograph of Ray Earley.
Officer R.L. Webb testified that he went to the residence of Mrs. Mary Alice Duchock and talked with her, first, on the evening of October 15, 1975, after being sent there by a police dispatcher. He stated that Mrs. Duchock gave him the description of a blond, blue-eyed, white male in his late teens or early twenties, about six feet tall, with acne on his face. Officer Webb also stated that Mrs. Duchock gave him the name of one Ray Earley. He stated that the following day he obtained a photograph of Ray Earley and took it to her home. He stated that Mrs. Duchock made a positive identification of this individual, and that she signed a complaint, charging Earley with unlawful trespassing.
Officer Webb indicated that he later gave this photograph to Sergeants Mosko and Hoehn for their use in the investigation.
Mrs. Duchock was then recalled to the stand and examined concerning the telephone conversation, which she had on the night of the incident in question, and as to how she got the name of Ray Earley. Mrs. Duchock then testified that she had not wanted to involve the lady who told her about this, but that a niece, one Sandra Bousack, while en route to Wylam School, had overheard a group of boys talking and said that Earley was bragging about having gone to Mrs. Duchock's home. Mrs. Duchock stated that Sandra Bousack overheard this and told her mother when she got home from school. She stated that Mrs. *Page 497 
Richard Bousack then telephoned her and gave her this information. This conversation took place on October 16, 1975, and they had talked previously the evening of the incident.
The trial court then determined from the testimony that the identification of the appellant, Ray Earley, was not "unduly tainted" by the pretrial photographic identification procedure and denied the motion to suppress.
Mrs. Mary Alice Duchock was then called to testify before the jury. She related the occurrence of the same evidence as hereinabove set forth on the evening of October 15, 1975, and stated that the ensuing telephone conversation with her friend, Mrs. Bousack, was reported to the police, also the conversation with Officer Webb, and the identification of the photograph of Ray Earley the next day. Mrs. Duchock's in-court identification of the appellant is as follows (R. p. 55):
"Q. Could you describe him?
"A. Yes sir.
"Q. Go ahead and describe him.
"A. As I saw him that night?
"Q. Yes, ma'am.
 "A. He had on a purple T shirt and he had yellow oily stringy hair and a lot of acne type pock marks on his face and blue eyes and his mouth hung open like he had an adenoid problem.
 "Q. You are absolutely certain that's the man right there?
"A. Yes, I am."
Mrs. Duchock then identified a photograph of her residence. She stated that she also had given a description of the appellant to Sergeants Mosko and Hoehn. She testified that she had selected the appellant's photograph on Saturday, October 21, 1975, from a group of eight shown to her by the two officers on that date. Mrs. Duchock indicated that she did not attend a police lineup, and that her in-court identification of the appellant, and the subsequent burglary charge, were based upon the appellant's coming to her home on the night of October 15, 1975.
Officer R.L. Webb was then recalled to testify before the jury. He stated that he first went to the home of Mrs. Mary Alice Duchock at about 7:36 o'clock on the night of October 15, 1975. He stated that it took him "about six minutes" to arrive at the residence at 4121 6th Court, Wylam, Alabama, after receiving a radio dispatch. Officer Webb stated that Mrs. Duchock gave him the name of an individual that night, and the following day he took a photograph by her home for her to identify.
The appellant's motion to exclude the State's evidence was overruled.
S.C. Bisset stated that he worked at the Blind Rehabilitation Center in the Avondale section of Jefferson County on October 15, 1975. Mr. Bisset indicated that Ray Earley began employment for him on October 15, 1975, working from 8:00 o'clock in the morning until about 4:00 o'clock in the afternoon. He stated that Earley received one day's pay, $9.40, in cash, which was placed in a yellow manila envelope with his name on it.
Frank Posey stated that he went to his residence at 315 44th Street in Fairfield, between 5:00 o'clock and 5:30 o'clock on the afternoon of October 15, 1975. Mr. Posey stated that his two sons, Roy and a younger son, were at home with Ray Earley. Mr. Posey stated that as he walked across his yard he found a manila envelope with $9.40 written on the outside and that he recognized it as a pay envelope. He carried it inside. He stated that the boys stayed at his home shooting pool until about 7:30 or a quarter of 8:00 that evening. He indicated that Ray Earley left with his son, Roy, in Roy's 1966 Ford Mustang automobile, and that Roy returned a short time later.
Roy Posey testified that Ray Earley had been at his home from shortly after 5:00 o'clock until about 7:45 o'clock on the evening of October 15, 1975, when they left in his 1966 Mustang, and that he drove straight to Ray Earley's home, arriving there at about 8:00 o'clock. He stated that he then left.
On cross-examination, Roy Posey stated that Ray Earley had just started work at *Page 498 
the Rehabilitation Center School that day. He also stated that Ray Earley was in the automobile with him when Earley was arrested a couple of weeks later.
Mrs. Laventris Earley stated that on October 15, 1975, her son, Ray Earley, left shortly before 8:00 o'clock in the morning to go to work at the Rehabilitation School. She said that on Wednesday, October 15, 1975, about 8:00 p.m., she saw her son drive up in the driveway in a car with Roy Posey. Mrs. Earley stated that her son was at the Posey residence from the time he got off work until he returned home.
In response to questioning on re-examination, Mrs. Earley said she did not think her son left home on the evenings of October 13, or October 14, and that he went to work on October 16, 1975. She stated that her home was located at 712 3rd Street in the Pleasant Grove section of Jefferson County, and that her son arrived home "about 8:00 o'clock" on the night of October 15, 1975.
 I
The appellant contends that the trial court erroneously overruled his motion to suppress the photographic identification of Ray Earley, and cites us to Simmons v. UnitedStates, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.
We have carefully examined the suppression hearing and determined that Mrs. Duchock's testimony was not so "tainted" by the pretrial exhibition to her of the photograph of the appellant as to require the suppression of her identification of the appellant. Mrs. Duchock gave Officer Webb, on the night of October 15, 1975, an identification of the appellant as set forth in this opinion. She described him as between five feet ten inches and six feet tall, thin, about 160 pounds, long blond hair, blue eyes, acne complexion, and that his mouth drooped open noticeably. Mrs. Duchock also gave Officer Webb the appellant's name that same evening. She stated that she had received this name by virtue of a telephone call from her friend, and made a positive identification at trial of the appellant based upon her observation of him in her kitchen that evening.
Mrs. Duchock also identified the appellant as being the individual portrayed in the photograph shown to her by Officer Webb the following day, October 16, 1975, and subsequently positively selected Ray Earley's photograph from a group of eight exhibited to her by Sergeants Mosko and Hoehn on October 21, 1975.
Having considered the totality of the circumstances presented by this record, we are clear to the conclusion that Mrs. Duchock's in-court identification of the appellant was not subject to be stricken. Childers v. State, Ala.Cr.App.,339 So.2d 597, cert. denied, Ala., 339 So.2d 601; Henry v. State, Ala.Cr.App., 355 So.2d 411; Lomax v. State, Ala.Cr.App.,359 So.2d 832, and authorities cited in these cases.
 II
Appellant contends the State failed to prove a prima facie case of burglary.
In Eason v. State, 48 Ala. App. 471, 265 So.2d 913, we find:
 "The applicable elements of second degree burglary are: (1) breaking, (2) entering, (3) with intent to steal or to commit a felony. The evidence, without contradiction, shows the first two ingredients. Behel v. State, 40 Ala. App. 689, 122 So.2d 537. From Behel, this Court per Cates, J., stated: `The jury may reasonably infer intent to steal from the mere presence of the accused in the shop in circumstances showing a breaking and entering in the night. . . .'" [Cases cited]
It is clear under the evidence presented that the trial court properly denied appellant's motion to exclude and overruled his motion for a new trial, challenging the weight and sufficiency of the evidence. Hare v. State, 52 Ala. App. 279, 291 So.2d 371;Eason v. State, supra; Rhodes v. State, Ala.Cr.App.,355 So.2d 402.
 III
Finally, appellant contends that the cumulative effect of comments by the district *Page 499 
attorney and the statements made in argument constitute reversible error. In particular, appellant's counsel contends that the district attorney's argument was tantamount to the reference to the appellant's not taking the stand and testifying at trial. The closing argument in this cause is as follows (R. pp. 85-88):
"THE COURT: Are you, gentlemen, ready to sum up?
"MR. GOMANY: Yes, sir.
"THE COURT: All right, you may commence.
 "(Thereupon, Mr. Gomany addressed the jury in opening argument on behalf of the State of Alabama, there being no objections made nor exceptions reserved. Mr. Dodd addressed the jury in argument on behalf of the defendant, during which the following objections were made):
"MR. DODD: Shown a picture by itself.
"MR. GOMANY: I make objection that he not continue.
 "THE COURT: Ladies and gentlemen, I leave it up to your individual recollection as to what the actual testimony was. However, I caution Mr. Dodd to restrict it to the testimony adduced in the presence of the jury.
"* * * * * *
"MR. DODD: He touched something.
 "MR. GOMANY: No testimony he touched anything — arguing things not in evidence.
 "THE COURT: I will leave it up to the circumstantial evidence.
"* * * * * *
"MR. DODD: And they are not Ray Earley's are they?
"MR. GOMANY: Objection.
 "MR. DODD: If they were Ray Earley's, they would be right up here and they would put them on the stand.
 "MR. DODD: If they were Ray Earley's they would be right up here and they would put them on the stand.
 "THE COURT: Just a minute, Mr. Dodd, there is an objection.
 "MR. GOMANY: Objection to Mr. Dodd testifying there were fingerprints all over the door. There was no such testimony adduced from the witness stand.
 "THE COURT: Sustain, restrict it to the evidence that's been introduced.
 "MR. GOMANY: Ask that I be allowed to respond in kind to the argument.
"THE COURT: Then are you withdrawing the objection?
 "MR. GOMANY: As much as he went into it, I would like to be able to respond to it.
 "THE COURT: I have already sustained the objection. Go ahead.
"* * * * * *
 "MR. DODD: Ask you what the District Attorney's office would have done.
"MR. GOMANY: Object to that.
"THE COURT: Sustain.
 "MR. GOMANY: Objection to Mr. Dodd arguing what I would do in this case.
"THE COURT: Sustain.
 "(Thereupon, Mr. Gomany addressed the jury in closing argument on behalf of the State of Alabama, during which the following objections were made:)
 "MR. GOMANY: I couldn't cross-examine, how do we know.
"MR. DODD: Objection and move for a mistrial.
 "THE COURT: I sustain the objection but deny the motion for a mistrial.
 "MR. DODD: I except, totally prejudicial to the defendant.
 "MR. GOMANY: Judge, may I approach the bar with Mr. Dodd?
 "THE COURT: Just a minute, disregard that last statement by the District Attorney, ladies and gentlemen. You are not to consider it in the statement of counsel, either one of the lawyers, is not evidence in this case. You are not to consider it as evidence in any manner. All they can do at this point is create reasonable inference from the evidence. You are to decide this case from the evidence and the evidence alone. Go ahead, Mr. Gomany.
 "MR. GOMANY: Who knows what he would have done if she hadn't startled him first? *Page 500 
 "MR. DODD: Objection to that Judge, move to exclude it.
"THE COURT: Sustain. Exclude it.
 "MR. GOMANY: I think your common sense tells you what he was up to.
 "MR. DODD: Judge, that's irrelevant, prejudicial, has no basis in this trial. There is no testimony at all about something of that nature.
 "THE COURT: Well if we carry the argument of the defense one step further, it could be a reply in kind as to using your common sense. Go ahead.
"* * * * * *
 "MR. GOMANY: People have been breaking in homes in Jefferson County. . . .
 "MR. DODD: Objection, prejudicial, move it be excluded.
 "THE COURT: Sustain, exclude the last statement by the District Attorney. You are not to consider it in any manner.
"* * * * * *
 "MR. DODD: Objection to saying convictions stop burglaries.
"THE COURT: Sustain.
"* * * * * *
 "MR. GOMANY: Burglaries are about one of the biggest of all crime increases in Jefferson County.
 "MR. DODD: I interpose an objection again. I don't know where this fits into argument.
"THE COURT: Sustain.
 "MR. DODD: Ask Judge to instruct the jury to disregard.
 "THE COURT: Disregard that last statement by the District Attorney, ladies and gentlemen."
In examining the several objections made by the defense counsel to the district attorney's statements, several of these were sustained and comment made that the jury would only consider such testimony as came from the witness stand, and not to consider the argument of counsel as evidence. The prompt action of the trial court, instructing the jury to disregard the remarks, removed any possible prejudicial effect that such statements may have had; thus, no error is shown. Adair v.State, 51 Ala. App. 651, 288 So.2d 187; Retowsky v. State, Ala.Cr.App., 333 So.2d 193; Napier v. State, Ala.Cr.App.,337 So.2d 62; Ellenburg v. State, Ala.Cr.App., 353 So.2d 810.
Moreover, with reference to the motion for a mistrial, which challenged the words by Mr. Gomany, "I couldn't cross-examine, how do we know," it is clear that such objection and motion is fragmentary in nature as the full context of the argument is not set forth properly for our review. McClary v. State,291 Ala. 481, 282 So.2d 384.
As noted in McClary, supra, the proper way to preserve an exception is for the attorney to stand and recite the words used and have them taken down so that the full context may be before the reviewing court.
Moreover, the trial court immediately sustained the objection and instructed the jury to "Disregard that last statement by the district attorney," and "Do not consider it as evidence in this case." In view of this strong admonition by the trial judge, as shown by the colloquy hereinabove quoted, we are clear to the conclusion that reversible error is not here shown. Troup v. State, 32 Ala. App. 309, 26 So.2d 611; Massey v.State, 49 Ala. App. 341, 272 So.2d 267, cert. denied 289 Ala. 747, 272 So.2d 270, and cases therein cited.
Moreover, the statement in question does not directly refer to the appellant since three witnesses had testified in his behalf. There being no direct reference attributable to the fragmentary statement, we do not believe the principles ofBeecher v. State, 294 Ala. 674, 320 So.2d 727, are here applicable. Cf. Robinson v. State, Ala.Cr.App., 352 So.2d 11.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur. *Page 501