Anthony Joseph Grady was indicted for first degree murder in the shooting death of William Bennett Alpert, Jr., and at trial was found guilty by the jury of murder in the second degree, with punishment being fixed at twenty years in the state penitentiary. From the trial court's judgment and sentence, Grady brings this appeal, contending that certain statements made by the prosecutor during closing argument were so prejudicial as to deny Grady a fair trial.
The evidence adduced by the State tended to show that, on the night of August 28, 1979, appellant and Alpert, the deceased, had been engaged in an argument, while both were standing on the corner of 11th Avenue and 16th Street in the City of Birmingham. Although there were apparently a number of persons present during the time of the events in question, only one witness, a Larry Mims, was produced to testify as to what he had seen. Mims stated that he knew both men, and that, although he was not really paying attention, he had noticed that appellant and Alpert were arguing about something and that at one point Alpert had walked down the street, only to return to resume the argument. Mims did not hear any of what was said with the exception of a reference by Alpert to "`Because I know what you was in the jail house'" (R. 30). At that point, appellant and Alpert appeared ready to exchange blows, but did not commence fighting, instead only continuing to circle each other and argue. Witness Mims stated that he then heard a gunshot and saw Alpert fall to the sidewalk behind a car, after which appellant walked over and kicked Alpert, and left the scene. Mims testified further that he never saw either man produce a gun, although both had their hands in their pockets immediately prior to the shooting, and did not see the actual shooting, nor did he see appellant with a gun after the incident.
Other witnesses for the State included the investigating police officer, who testified that, upon his arrival, he had seen a number of people standing around Alpert's body, and had subsequently conducted a search of Alpert's person. The officer stated that he did not find a weapon, nor did he recover any money or drugs from the deceased's person. An employee of the Medical Examiner's Office testified that he had performed an autopsy on the deceased, and that the cause of death was a single gunshot *Page 1097 
wound. He further stated that he was not certain of whether a blood sample taken from the deceased had revealed the presence of alcohol or drugs.
Albert Wallace, a sergeant in the homicide division of the Birmingham Police Department, testified that, on September 14, 1979, he had conversed with appellant at the Birmingham City Jail, and had recorded certain statements made by appellant. Sergeant Wallace stated that he had not offered appellant any inducement or hope or promise of any type of reward, and had further read appellant his rights from a "Miranda card";[1]
appellant had acknowledged his understanding of his rights, and had agreed to make the statement. At that point, Sergeant Wallace read the statement into evidence. In his statement, appellant acknowledged that he had known Alpert from a prior stint in the Jefferson County Jail, but that the first time he had seen him after that was on August 28, 1979. During their meeting on the street that night, Alpert and appellant had commenced talking in a somewhat jovial manner, but Alpert had suddenly become angry and had "`run his hands in his pockets'" (R. 67), at which point appellant pulled a pistol out with which to hit deceased. The pistol "went off" and Alpert was struck and fell, but appellant admitted that he then kicked Alpert as he lay on the ground, and left the scene.
The statement reveals that, under further questioning, appellant elaborated on the events of the night of the shooting. According to appellant, Alpert had first approached him holding a beer, had shaken hands with appellant, and had then started talking "about the jail." Appellant stated that Alpert was taking pills in addition to the beer he was consuming, and that he continued to bait appellant about an incident in the County Jail in which, apparently, Alpert had raped, or had participated in the rape of appellant. Sergeant Wallace stated that appellant was very embarrassed about relating the details of this incident, and that appellant had expressed a fear of Alpert. The officer further testified that he believed a fair synopsis of the events of the night of August 28, 1979, to be that Alpert had continually teased appellant about the rape, had then become angry and put his hands in his pocket, and at that point appellant had shot him.
The State rested at this point, and appellant's motion to dismiss the indictment for the failure of the State to prove a prima facie case was overruled. The appellant then called several witnesses, the major one being Richard Lake. Lake admitted that he had been convicted on previous occasions of robbery and assaulting a police officer with a deadly weapon. He stated that he had been present at the scene of the shooting on August 28, 1979, and that he had observed the argument between appellant and Alpert, although he had not paid much attention to it. Lake testified that, at one point, he saw Alpert wander down the street and converse with another person, and that he thought something was exchanged between the two. Alpert then returned and resumed his argument with appellant, and they started struggling, at which point a gunshot was heard by Lake. Lake further testified that he did not see Alpert with any sort of weapon, and that he was not sure whether appellant had had a gun. Lake was also permitted to testify that he was informed that Alpert had been given some marijuana cigarettes by the individual with whom he had talked before resuming his argument with appellant.
Appellant rested his case without taking the stand.
 I
The only grounds advanced by appellant as justifying a reversal of his conviction concern statements made by the prosecutor during his final argument, and which appellant argues were so prejudicial as to deny him a fair trial. Appellant thus first contends that the trial court should have granted his motion for a mistrial based upon the following comment by the prosecutor: *Page 1098 
 "Mr. NAIL: Now, he says we are going to lock him up and throw him away for life. If you read the papers you know how long people stay locked up —
 "MR. APPELL: Judge, I move for a mistrial on the basis of that statement.
 "THE COURT: Ladies and gentlemen, disregard that. Disregard that, ladies and gentlemen. Can all of you disregard that?
 "MR. APPELL: I don't think anyone possibly can. I ask for a mistrial.
 "THE COURT: That is improper, disregard it. Proceed, Mr. Nail." (R. 121-122)
The essence of appellant's argument in this regard is that the statement of the prosecutor must be interpreted as a prejudicial reference to the possibility of appellant's parole, probation or some such other consideration, and the trial court's curative instructions were insufficient to eradicate the prejudicial effect of the comment. The State, on the other hand, asserts that the disputed statement was not an impermissible reference to parole, but merely a response to a previous argument by counsel for appellant, and that, in any event, any error was adequately cured by the court's instructions.
Initially, it seems quite clear that the statement, "If you read the papers you know how long people stay locked up —," though somewhat fragmentary (see McClary v. State, 291 Ala. 481, 282 So.2d 384 [1973]) and not directly referring to the possibility of parole or the like, does intimate strongly that any prison term meted out to appellant might be mitigated by some future event such as a parole or escape. Cf., Eaton v.State, 278 Ala. 224, 177 So.2d 444 (1965) (only inference of argument that "`A man like this, if he was to get off with life imprisonment, he would be out and around'" is that accused would "either escape . . . or be paroled"). The courts of this State have often held that possibilities of future paroles, probation, escape and the like are not proper considerations for a jury in determining the issues of an accused's guilt or innocence and his sentence, and thus arguments to this end are improper. In Murray v. State, Ala.Cr.App., 359 So.2d 1178
(1978), the rule and its rationale were stated thusly:
 "A jury should perform its duty both as to the question of guilt and as to the extent of punishment, if within the province of the jury, irrespective of what someone else, including the trial court, appellate courts and all probation, parole and pardoning authorities might do in the future. That is not a matter for the jury to consider. A rule permitting any agency in the administration and execution of justice to knowingly attempt to ease its conscience or evade its responsibility in the assumption that another agency will rectify its failure to perform its separate responsibility would lead inevitably to subversion, irrespective of the good intentions that might at times prompt such action."
See, Eaton v. State, supra; Lee v. State, 265 Ala. 623,93 So.2d 757 (1957); Cobb v. State, 248 Ala. 548, 28 So.2d 713
(1947); Matthews v. State, 54 Ala. App. 359, 308 So.2d 718
(1975). This proposition has been applied in several contexts, especially in those involving, in the past, the imposition of a prison term as opposed to the death penalty, or those instances where an accused seeks to establish his innocence by reason of insanity, and a prosecutor thus seeks to sway the jury's decision in that regard by raising the spectre of an early release from a mental institution. Allred v. State, 291 Ala. 34, 277 So.2d 339 (1973), cert. denied, 423 U.S. 859,96 S.Ct. 113, 46 L.Ed.2d 86 (1975); Dunn v. State, 277 Ala. 39,166 So.2d 878 (1964); Whisenhant v. State, Ala.Cr.App.,370 So.2d 1080, cert. denied, Ala., 370 So.2d 1106 (1979).
But while the argument of the prosecutor, if construed as we have noted above, would be palpably improper, there is merit to the State's contention that, if the statement of the prosecutor was only a reply to an earlier line of argument by the counsel for appellant, then the prosecutor's argument would be exempt from the application of the rule announced in Murray, supra. *Page 1099 
The State cites the first portion of the disputed statement, where the prosecutor said, "Now, he says we are going to lock him up and throw him away for life," undoubtedly a reference to the requirement that one found guilty of first degree murder be sentenced to life imprisonment, § 13-1-74, Code of Alabama 1975. Further, the following also occurred:
 "MR. APPELL: Judge, simply for the record I want to renew my motion for a new trial. I don't know if all of this was in the record, but during Tommy Nail's closing argument, he made an allegation or statement that the members of the jury have all read the newspapers and they knew this defendant who was sitting here would not spend the rest of his life in jail, if he was convicted, alluding to the fact that he would get parole or probation or something.
"THE COURT: Well, I granted it — I sustained it.
 "MR. NAIL: Judge, I would like to respond to that. Mr. Appell brought that up in his argument and told the jury that we wanted to lock him up and throw the key away for the rest of his natural life. And the state has a right to rebut that. Even though his argument is probably improper, we have a right to rebut that and go into that on our argument on rebuttal to his reply in his closing argument.
"THE COURT: All right." (R. 138)
The decision of this Court in Matthews v. State, 54 Ala. App. 359, 308 So.2d 718 (1975), treated the contention here raised by the State in the context of a case where the defense attorney had argued that the accused would at least get a minimum sentence, and the State had countered with the suggestion of the possibility of probation. The Court there stated:
 "It is true that argument by a District Attorney to a jury that a defendant convicted and sentenced to the penitentiary may be eligible for pardon or parole is improper and has been held to be reversible error . . . However, it is further held that if that argument is in reply to argument by the defense that the defendant, if convicted, will be sentenced to the penitentiary, the rule above referred to does not apply and the district attorney is within his rights in making his reply to a subject first introduced in argument from the defendant."
Similarly, in Ellis v. State, 38 Ala. App. 379, 86 So.2d 842
(1955), cert. dismissed, 264 Ala. 695, 86 So.2d 846 (1956), the Court of Appeals had occasion to note:
 "We have here a statement to the jury by counsel that, if convicted, the defendant would be sent to penitentiary. That, of course, precluded probation possibilities. In view of this situation, we think the solicitor had the right to call to the attention of the jury the fact that probationary rights are available and the statement of counsel was not correct in its entirety."
See also, Smith v. State, 40 Ala. App. 208, 110 So.2d 340
(1959).
The appellant argues, however, that the argument of the prosecutor could not be argument "in kind" since the closing statements were not fully transcribed, citing in support of this proposition the Supreme Court's decision in Whitt v.State, Ala., 370 So.2d 736 (1979). There, the Court did say that, "It seems self-evident that it cannot be `argument in kind' when we do not have the defense counsel's argument to which this comment is said to reply. The record does not contain the closing arguments in this case." We find that in this case, however, enough of the disputed arguments was presented for review in that the prosecutor virtually restated at two separate points the gist, if not the exact wording, of the argument by counsel for appellant without any refutation by him. The thrust of such an argument was to impress on the jury that a conviction for first degree murder would entail the sentence of life imprisonment, and we feel that under the above-cited authorities that it was proper for the prosecutor to argue the possibilities of other possibly mitigating circumstances.
We note that the trial court promptly sustained the objection of appellant as to *Page 1100 
the statement anyway, and cautioned the jury about taking such things into consideration. The authorities we have cited above all stand for the further proposition that any prejudicial effect of an improper argument in this regard may be sufficiently eradicated by prompt instructions to the jury. We feel that here the trial court mounted a quite sufficient attempt at warning the jury concerning what it considered as the prejudicial nature of the prosecutor's argument. No precise wording is needed and we decline to impose such technical considerations on a trial judge. We thus find that, though the argument of the prosecutor was probably not improper under these circumstances, any possible prejudicial effect was promptly eradicated by the action of the trial court. There was certainly no error in refusing to declare a mistrial. Shadle v.State, 280 Ala. 379, 194 So.2d 538 (1967); Retowsky v. State, Ala.Cr.App., 333 So.2d 193 (1976); Lippold v. State, Ala.Cr.App., 365 So.2d 1015, cert. denied, Ala., 365 So.2d 1022
(1978); Earley v. State, Ala.Cr.App., 358 So.2d 494, cert.denied, Ala., 358 So.2d 501 (1978); Gipson v. State, Ala.Cr.App., 375 So.2d 504, cert. denied, Ala., 375 So.2d 514
(1979); Bailey v. State, Ala.Cr.App., 375 So.2d 1278, cert.denied, Ala., 375 So.2d 1284 (1979); Kuczenska v. State, Ala.Cr.App., 378 So.2d 1182, cert. denied, Ala., 378 So.2d 1186
(1979); Kendricks v. State, Ala.Cr.App., 378 So.2d 1203 (1979);Merchant v. State, Ala.Cr.App., 384 So.2d 627, cert. denied, Ala., 384 So.2d 632 (1980).
 II
Likewise, during the closing arguments of the prosecutor, the following occurred, which appellant contends was an impermissible attempt on the part of the prosecutor to comment on the failure of appellant to take the stand in his own defense:
 "MR. NAIL: If it was self-defense, why didn't he stay there and tell the police? He had a say. He leaves, he throws the gun away. This happened on August the 28th, I believe, from the evidence, and September the 17th he tells Sergeant Wallace, when he knows he is going to be charged in this case, that was self-defense, he had his hand in his pocket, I knew what a bad fellow he was, because he raped me up in the jail. That is nothing more than a self-serving statement. He knew he was going to be charged in this case. He was trying to justify what he did. I am not saying it did or didn't happen, I am saying that we don't know. There are only two people that know and one of them is dead. He is not here to tell you what his side of the story and the version of what happened up there in the jail.
 "MR. APPELL: Objection, Your Honor, to the statement — as an unconstitutional statement relating to the defendant. And I move for a mistrial.
"THE COURT: Overruled. Mr. Appell." (R. 118-119)
It is clear that, in the realm of federal constitutional law, the Fifth and Fourteenth Amendments to the United States Constitution prohibit a prosecutor from commenting to the jury on the failure or refusal of an accused to testify in a criminal proceeding, Griffin v. California, 380 U.S. 609,85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), although an argument that the State's evidence is unrefuted and uncontradicted is permissible, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,57 L.Ed.2d 973 (1978), and the trial court may instruct the jury that it may not consider the failure of accused to take the stand. Lakeside v. Oregon, 435 U.S. 333, 98 S.Ct. 1091,55 L.Ed.2d 319 (1978). The Alabama law in this area has in the past been transformed into a virtual quagmire due to apparently inconsistent interpretations of Ala. Const. Art. I, § 6 ("that in all criminal prosecutions, the accused * * * shall not be compelled to give evidence against himself * * *") and §12-21-220, Code of Alabama 1975 (formerly Tit. 15, § 305, Code of Alabama 1940), which states:
 "* * * If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment." *Page 1101 
In Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975), the Supreme Court attempted a reconciliation of views on this point, stating:
 "It has long been held regarding the introduction of illegal evidence, such as coerced confessions, that the test is not whether the illegal evidence did influence the jury, but whether it might have influenced it in arriving at the verdict . . . Under Const. of Ala. of 1901, § 6, there is no valid basis for using a different test for improper prosecutorial comment. Thus we hold today that where there is the possibility that a prosecutor's comment could be understood by the jury as reference to failure of defendant to testify, § 6 is violated. We specifically disapprove any contrary cases which construe Code of Alabama, Tit. 15, § 305, as requiring reversal only when there is virtually a direct identification of the defendant as the one who did not testify . . . Thus if there exists the possibility that the prosecutor has commented in such a manner that the jury may understand it as a comment on the defendant's failure to testify, it is for the trial court to cure this violation of prosecutorial duty by prompt and vigorous instructions to the jury informing them of defendant's right not to be compelled to testify and that they may draw no presumption from his decision not to testify." (Footnotes omitted.)
Admittedly, the trial court here did not sustain the objection of counsel for appellant to the statement of the prosecutor, and certainly did not instruct the jury regarding the failure of the appellant to testify. It would thus be evident that appellant's conviction would have to be reversed under the mandates of Beecher if we were to conclude, as appellant urges, that the comment here was arguably one on the failure of appellant to take the stand.
A number of pre- and post-Beecher decisions in this state have reversed convictions where it was found that certain comments by prosecutors were direct or arguable references on the failure of the accused to testify. May v. State, 209 Ala. 72,95 So. 279 (1923); Warren v. State, 292 Ala. 71,288 So.2d 826 (1973); Beecher v. State, supra; Whitt v. State, Ala.,370 So.2d 736 (1979); Harris v. State, 33 Ala. App. 623,36 So.2d 254 (1948); Padgett v. State, 45 Ala. App. 56, 223 So.2d 597,cert. denied, 284 Ala. 732, 223 So.2d 597 (1969); Lamberth v.State, 54 Ala. App. 233, 307 So.2d 43 (1975); Robinson v. State, Ala.Cr.App., 352 So.2d 11, cert. denied, Ala., 352 So.2d 15
(1977); Qualls v. State, Ala.Cr.App., 371 So.2d 949, cert.denied, Ala., 371 So.2d 951 (1979); Burson v. State, Ala.Cr.App., 373 So.2d 1239 (1979); Fleenor v. State, Ala.Cr.App., 372 So.2d 902, cert. denied, Ala., 372 So.2d 904
(1979); Meade v. State, Ala.Cr.App., 381 So.2d 656, cert.denied, Ala., 381 So.2d 659 (1980). An examination of these authorities and their comparison with the facts here complained of leads us to the conclusion that the statement of the prosecutor here was not any sort of comment on the failure of appellant to testify.
The comment made by the prosecutor and reproduced above is somewhat similar in thrust to comments held impermissible inWhitt, Qualls, and Lamberth, supra. In Whitt, the Supreme Court held that, in accordance with Beecher, the statement, "`the only person alive today that knows what happened out there that night is sitting right there,'" was an impermissible direct comment on the failure of the accused to take the stand. Similarly, in Qualls, the prosecutor had stated that, "`There were two eye witnesses to what happened, who are they?. Kenneth White was an eyewitness, he is dead, so he cannot testify. Linda Sue Qualls [the accused] was an eyewitness to what happened'" but the accused had not testified; such a comment was held reversible error. And in Lamberth, also a homicide case involving an automobile accident, the prosecutor made a statement to the effect that only the deceased victims and the accused were witnesses and thus the only person who could testify to what had happened was the accused; the conviction was reversed. The appellant here argues that, since he did not take the stand to testify concerning the *Page 1102 
events in jail, any reference to the failure of the ability of the deceased to testify reflected on the appellant's refusal to do so.
This contention ignores the thrust and context of the prosecutor's argument. As we read the statement, it only refers to the statement given by appellant and admitted into evidence in which he put forward a defense of self-defense, and in which appellant claimed that the deceased had raped him in jail at an earlier time. The prosecutor, making an inference from the evidence, commented that the deceased was obviously unable to now refute the contention of appellant made in the statement. We find that a very similar situation was present in Johnson v.State, 272 Ala. 633, 133 So.2d 53 (1961), where accused had objected to the use of his statement in the prosecutor's argument on the very grounds here advanced.
The Court, in dismissing this argument, stated:
 "The statement was merely a comment by the solicitor upon the evidence admitted during trial and not an unfavorable allusion to the appellant's silence. It was merely a statement of what the defendant had stated in his confession. The statute is, of course, designed to prevent the creation of any unfavorable inferences from the accused's silence, but it does not abrogate the right of State's counsel to comment on legitimate inferences of the evidence."
We find that the prosecutor was merely attempting to refute the facts alleging self-defense and contained in appellant's statement, which was in evidence, and not commenting on the failure of appellant to testify. See also, Earley v. State, Ala.Cr.App., 358 So.2d 494, cert. denied, Ala., 358 So.2d 501
(1978).
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).