The appellant, Richie Hannah, was indicted for the murder of Rufus Fontaine and Curtis Johnson, which cases were consolidated for trial. He was found guilty of manslaughter in each case, and was sentenced to ten years' imprisonment in each case, with these sentences to run consecutively.
The appellant, on the date in question, had been involved in a dice game in which he has lost a substantial amount of money. The appellant became upset, pointed a gun at Flavius Henderson, and the gun "just went off." No one was hit by the shot and the other players appeared to be in shock. The appellant then turned and shot twice into the crowd. The crowd then scattered with the exception of Henderson and a few other individuals. One man, Rufus Fontaine, was still kneeling as if he were shooting craps. The appellant approached Fontaine and stated, "This is a robbery," and fired the gun. Fontaine fell to the ground and quickly jumped back up and tried to run away. Fontaine had apparently been shot in the head. He was taken to a hospital, where he died. The appellant began chasing Henderson, who ran to a park. Henderson heard a shot, fell to the ground, and observed Curtis Johnson lying on his stomach with blood coming from his chest. Henderson then ran to the community center. The appellant approached Johnson with the gun still in his hand, stood beside him for approximately 30 seconds, got on his bicycle, and left.
 I
The appellant argues that the trial judge committed reversible error by instructing the jury on the alternative theories of universal malice and intentional murder when the indictment charged murder by intentional murder alone. Specifically, he contends that the trial court instructed the jury, over his objection, that an accident can be murder although the indictment was limited to intentional murder. The trial court charged the jury in pertinent part:
 "To sustain the charge of murder in this case, the State, by the evidence, *Page 184 
must prove beyond a reasonable doubt and to a moral certainty each of the following elements of the offense. First, that Curtis Johnson is dead. That Richard Hannah caused the death of Curtis Johnson. That is that Curtis Johnson died as a result of being shot with a pistol by Richie Hannah. That in committing the act which caused the death of Curtis Johnson, Richie Hannah acted with intent or under circumstances manifesting extreme indifference to human life, the Defendant acted recklessly engaging in conduct which created a grave risk of death to a person other than himself and which in fact caused the death of Curtis Johnson. . . .
". . . .
 "An accidental death may constitute murder if under circumstances manifesting extreme indifference to human life, the Defendant recklessly engages in conduct which creates a grave risk of death to the victim and thereby caused the victim's death."
In Ex parte Washington, 448 So.2d 404 (Ala. 1984), the Alabama Supreme Court noted that an indictment must inform an accused of the offense with which he is charged so that he may adequately prepare a defense. Id. at 407; Ex parte Hightower,443 So.2d 1272 (Ala. 1983). "The person accused of a crime is required at trial to answer only the specific charge contained in the indictment. Geeter v. State, 35 Ala. App. 207,45 So.2d 167 (1950)." Washington, 448 So.2d at 407. In Washington, the Supreme Court further determined that universal malice murder is not an offense included within the statutory definition of intentional murder. The Court noted that one difference between intentional murder and reckless murder or universal malice murder is that of the kind of culpability; however, it was noted:
 "Under § 13A-1-9(a)(4), reckless murder could be considered an included offense of intentional murder, the indicted offense, if it differed from the indicted offense only because it required a lesser kind of culpability. However, there is another difference. If only a lesser type of culpability is shown, recklessness, the offense is manslaughter. Code 1975, § 13A-6-3(a)(1). Section 13A-6-2(a)(2) must require something more. Section 13A-6-2(a)(2) requires a showing that the defendant's conduct was directed at human life in general as opposed to a particular individual. This additional difference between the offense he was indicted for, intentional murder, and universal malice murder precludes the latter from being an included offense, since it can be established only by a showing of facts not required in order to be convicted of intentional murder under § 13A-6-2(a)(1)." 448 So.2d at 408.
The State, in the case sub judice, concedes that the trial court erred in charging the jury on both intentional murder and universal malice murder. However, the State contends that because the appellant was convicted of manslaughter, he was not prejudiced by the erroneous charge. "The giving of an erroneous instruction is not ground for reversal where it could not in any manner have prejudiced the accused. Dennis v. State,118 Ala. 72, 23 So. 1002 (1898)." Crowder v. State, 476 So.2d 1241,1243 (Ala.Cr.App. 1985).
Furthermore, this court has previously addressed this fact situation in Chambers v. State, 455 So.2d 1008 (Ala.Cr.App. 1984). In Chambers, it was held:
 "The trial court did in fact commit error by reading the 'universal malice murder' charge, but the error became harmless when the jury returned a verdict of manslaughter, a lesser offense. See Hutcherson v. State, 441 So.2d 1048
(Ala.Crim.App. 1983); Weaver v. State, 35 Ala. App. 158, 44 So.2d 773 (1950); Garrett v. State, 33 Ala. App. 168, 31 So.2d 151 (1947); and Thompson v. State, 131 Ala. 18, 31 So. 725 (1902)." 455 So.2d at 1010-11.
This court in Chambers, distinguished Ex parte Washington, supra, by stating:
 "Here, the appellant was indicted for murder and yet received a lesser conviction of manslaughter, even though one of the charges to the jury was 'universal malice murder' and therefore improper. *Page 185 
The jury chose not to rely on the improper charge, but decided to follow a different course and convict the appellant of a crime of lesser-degree. If the jury had convicted the appellant of 'universal malice murder,' as in the case of Washington, supra, then prejudicial error would have occurred and a reversal and remandment would be appropriate measures." 455 So.2d at 1011.
 II
The appellant argues that reversible error occurred when the prosecutor stated during his closing argument that the defendant "tells you he was drunk out of his skull" but the defendant did not testify and, further, the trial court neglected to give curative instructions to the jury following the appellant's objection. The appellant argues in his brief that the prosecutor's remark constituted a comment on the appellant's failure to testify. However, from a review of the record, it is clear that the prosecutor's remark concerned the appellant's defense of intoxication. Moreover, the record indicates that after the prosecutor made the comment and the defense counsel objected, the trial court stated, "Ladies and gentlemen, you will disregard that statement and not let it be a part of your deliberation." The court thereafter repeated those instructions. The trial judge is in the best position to determine whether the prejudicial effects of an improper remark can be eradicated by instructions to the jury, and his determination should be accorded great deference. Ringer v.State, 489 So.2d 646, 650 (Ala.Cr.App. 1986); Wysinger v.State, 448 So.2d 435 (Ala.Cr.App. 1983). "When, as here, a trial court immediately charges the jury to disregard improper remarks, there is a prima facie presumption against error."Woods v. State, 460 So.2d 291, 295 (Ala.Cr.App. 1984) (and cases cited therein); Ringer v. State, supra (and cases cited therein).
 "As a general rule, the prosecutor may state or comment, draw proper inferences and present his conclusion from the evidence based upon his own reasoning. Sanders v. State, 423 So.2d 348
(Ala.Crim.App. 1982); Hayes v. State, 395 So.2d 127
(Ala.Crim.App. 1980), cert. denied, 395 So.2d 150
(Ala. 1981); Liner v. State, 350 So.2d 760
(Ala.Crim.App. 1977). Furthermore, control of closing arguments rests in the broad discretion of the trial judge and, where no abuse of discretion is found, there is no error. Thomas v. State, 440 So.2d 1216 (Ala.Crim.App. 1983); Robinson v. State, 439 So.2d 1328 (Ala.Crim.App. 1983); Elston v. State, 56 Ala. App. 299, 321 So.2d 264
(1975). The trial judge can best determine when discussion by counsel is legitimate and when it degenerates into abuse. Hurst v. State, 397 So.2d 203 (Ala.Crim.App.), cert. denied, 397 So.2d 208
(Ala. 1981); Garrett v. State, 268 Ala. 299, 105 So.2d 541 (1958)."
Saffold v. State, 485 So.2d 806, 808 (Ala.Cr.App. 1986).
Moreover, before the prosecutor's remark "will be interpreted as an improper comment upon the failure of the defendant to testify, there must be virtually direct reference to the defendant alone as the individual who has not become a witness.Robinson v. State, Ala.Cr.App., 352 So.2d 11, cert. denied, Ala., 352 So.2d 15 (1977); and cases cited therein; §12-21-220, Code of Alabama 1975." Griffin v. State,393 So.2d 523, 528 (Ala.Cr.App. 1981).
The defense established a strong defense of intoxication in the present case sub judice, and, therefore, the prosecutor could legitimately comment thereon. Grady v. State,391 So.2d 1095, 1102 (Ala.Cr.App. 1980) ("the prosecutor was merely attempting to refute the facts alleging self-defense and contained in appellant's statement, which was in evidence, and not commenting on the failure of appellant to testify"). See also Calhoun v. State, 487 So.2d 265, 267-68 (Ala.Cr.App. 1986).
 III
The appellant argues that reversible error occurred when the trial court refused to allow him to publish photographs to the jury or use them and other demonstrative evidence during his summation. The evidence the appellant sought to use during *Page 186 
his summation allegedly depicted the scene where the shooting occurred. The appellant contends that this evidence was essential in that it served to rebut the testimony of several of the State's witnesses.
Prior to closing arguments, the following transpired outside the presence of the jury:
 "THE COURT: You can't argue with photos. I don't allow that.
 "[DEFENSE COUNSEL]: Let me go ahead and object to not being able to use demonstrative evidence, pictures. I object to that.
 "THE COURT: The court in its discretion believes that the jury's full attention would be diverted by either publishing during any part of this trial, it is far more beneficial to have their attention than to be publishing pictures which they will have in deliberation and any other demonstrative evidence that has been testified to.
 "[DEFENSE COUNSEL]: To my last objection I just wanted to state that as additional grounds the Sixth and Fourteenth Amendment rights have been prejudiced.
 "THE COURT: I would further state that this Court has ruled out what would have otherwise been admissible evidence showing damage done to the brain and to the cavity under the ribs and near the heart on [defense counsel's] request based on it would be inflammatory and prejudicial. This Court sustained his objection based on that and has been more than fair."
The use of such evidence is a matter within the sound discretion of the trial court. Stewart v. State,443 So.2d 1362, 1364 (Ala.Cr.App. 1983). The appellant contended that the evidence depicting the scene of the crime was necessary to rebut the testimony of a State's witness who claimed that she was able to see the offense from a window. However, the appellant was allowed the opportunity to rebut his testimony through the cross-examination of the witness. The trial court gave a sound reason for refusing to allow the evidence and also stated that he had disallowed other demonstrative evidence sought to be used by the State. Upon our review of the record, we do not find that the trial court abused its discretion in disallowing the use of this evidence.
AFFIRMED.
All the Judges concur.